INSURANCE COMPANY OF NORTH AMERICA, Plaintiff–Appellant,

v.

G.I. TRUCKING COMPANY, et al., Defendant–Appellee.

No. 92–15234.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 18, 1993.

Decided Aug. 2, 1993.

---

Glen R. Olson, Long & Levit, San Francisco, CA, for plaintiff-appellant.

---

* Hon. Thomas E. Fairchild, Senior United States Circuit Judge for the 7th Circuit Court of Appeals, sitting by designation.

James Attridge, Hanson, Bridgett, Marcus, Vlahos & Rudy, San Francisco, CA, for defendant-appellee.

Kenneth E. Siegel and Patricia J. McCabe, Alexandria, VA, and William D. Bierman, Westwood, NJ, for amicus curiae Nat. Freight Claims and Sec. Counsel.

William J. Augello, Augello, Pezold & Hirschmann, Huntington, NY, for amicus curiae Transp. Claims and Prevention Counsel.

Before: FAIRCHILD *, BEEZER, and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

### FACTS

On April 19, 1988, G.I. Trucking Company ("G.I.") transported a shipment of intraocular lenses from Los Angeles to Calexico, California, for Eye Technology, Inc. ("Eye Tech"). The shipment was damaged, and Eye Tech sought and received compensation for its damages from its insurer, Insurance Company of North America ("INA"). Having paid Eye Tech's claim, INA became the subrogee of Eye Tech's rights against G.I.

On December 2, 1988, Recovery Services, International ("RSI"), INA's subrogation unit, sent a letter to G.I. stating:

> We are the Subrogation Dept. for the Insurance Co. of North America: The Insurer of Eye Technology, Inc. This letter is our preliminary notice of loss/damage to the shipment of lenses in the amount of $100,000 (Estimate). Please note that we have not yet paid this claim to our insured; as soon as we will make payment to them we will send the final claim bill to you. We are enclosing herewith supporting documents pertaining to above file for your record.

On March 3, 1989, INA paid Eye Tech $97,500, and on March 27, 1989, RSI forwarded a "Standard Form for Presentation

of Loss" to G.I., claiming entitlement to $100,000.00. On April 4, 1989, G.I. denied responsibility and refused to pay the claim. The parties corresponded over the course of several months, but G.I. continued to deny any liability on INA's claim.

On April 4, 1991, INA filed suit against G.I. in California State court. INA asserted two causes of action, one for carrier liability and one for negligence. G.I. denied the allegations and removed the action to federal district court. G.I. then filed a motion for summary judgment, alleging that INA and Eye Tech had failed to file a claim for losses within the nine month period as per the bill of lading, the Carmack amendment, and regulations promulgated thereunder.

The district court, 783 F.Supp. 1251, granted G.I.'s motion for summary judgment stating that "[c]learly ... the plaintiff's December 2nd claim was for an 'uncertain amount' and did not constitute a legally sufficient claim within the requirements of the ICC regulations." INA appeals.

### STANDARD OF REVIEW

 We review a grant of summary judgment de novo. *F.D.I.C. v. O'Melveny & Meyers,* 969 F.2d 744, 747 (9th Cir.1992); *Jones v. Union Pac. R.R.,* 968 F.2d 937, 940 (9th Cir.1992). Viewing the evidence in the light most favorable to the non-moving party, we must determine whether there is a genuine issue of material fact and whether the district court applied the relevant substantive law correctly. *F.D.I.C.,* 969 F.2d at 747; *Jones,* 968 F.2d at 940.

### DISCUSSION

G.I. Trucking and Eye Tech entered into a carrier contract that incorporated by reference the Uniform Bill of Lading ("UBL") as part of the contract. Section 2.(b) of the UBL indicates that a written claim must be filed within nine months for a party to recover from a carrier for damage, loss, or delay. Courts have long recognized the reasonableness and validity of such provisions in bills of lading and have routinely enforced them. *See, e.g., Northern Pac. Ry. v. Mackie,* 195 F.2d 641, 642 (9th Cir.1952). Parties, howev-

er, are forever litigating whether a particular communication constitutes a sufficient written notice of claim. Indeed, that is the issue before us.

G.I. contends that INA cannot recover for its losses because of its failure timely to file a written notice of claim. INA, on the other hand, maintains that its December 2nd letter satisfies the claim requirement. We agree with INA.

The Interstate Commerce Commission ("ICC") has promulgated regulations that outline the minimum requirements of a written notice of claim under the UBL. The regulations provide that a notice must be in writing and contain (1) "facts sufficient to identify the baggage or shipment ... of property, (2) [an assertion] of liability for alleged loss, damage, injury, or delay, and (3) a claim for the payment of a specified or determinable amount of money[.]" 49 C.F.R. § 1005.2(b) (1992).

Paragraph (d) of § 1005.2 deals specifically with claims for uncertain amounts. 49 C.F.R. § 1005.2(d) (1992). It states that when such a claim is filed, the carrier against whom it is filed shall determine the condition of the baggage or shipment involved at the time of delivery and shall ascertain as nearly as possible the extent, if any, of the loss or damage for which the carrier may be responsible. *Id.* Paragraph (d) proscribes voluntary payment of the claim until a formal claim in writing is filed in accordance with the provisions of paragraph (b). *Id.*

Initially, it appears that these regulations govern resolution of this case. However, the circuits are split on the issue of whether the regulations apply to contested claims. Thus, the first issue we must resolve is whether the ICC regulations outlined above apply here.

Section 1005.1 of the ICC regulations, entitled "Applicability of regulations," provides that the regulations "shall govern the processing of claims for loss, damage, injury, or delay to property transported ... in interstate or foreign commerce...." *Id.* § 1005.1. The First and Second Circuits have concluded that this language indicates that the regulations are meant to apply to all claims against carriers, contested or uncon-

tested. *See Nedlloyd Lines v. Harris Transport,* 922 F.2d 905, 907 (1st Cir.1991); *Pathway Bellows, Inc. v. Blanchette,* 630 F.2d 900, 904 (2nd Cir.1980) (stating that "the regulations provide the appropriate standard for assessing the sufficiency of all claims irrespective of the way they may subsequently be resolved or adjudicated"), *cert. denied,* 450 U.S. 915, 101 S.Ct. 1357, 67 L.Ed.2d 340 (1981). The Seventh Circuit, however, has ruled that the regulations apply only to uncontested claims. *See Wisconsin Packing Co. v. Indiana Refrigerator Lines, Inc.,* 618 F.2d 441, 445 (7th Cir.) (en banc), *cert. denied,* 449 U.S. 837, 101 S.Ct. 112, 66 L.Ed.2d 44 (1980).

■ While this court has decided two "written claims" cases since promulgation of the regulations, neither of the decisions directly address whether the regulations apply to contested claims. *See Culver v. Boat Transit, Inc.,* 782 F.2d 1467 (9th Cir.1986); *Taisho Marine & Fire Ins. Co. v. Vessel Gladiolus,* 762 F.2d 1364 (9th Cir.1985). However, the *Culver* court implies that the regulations apply to contested claims. *See Culver,* 782 F.2d at 1468–69 & n. 1 (addressing certain provisions of 49 C.F.R. § 1005 and indicating that they are consistent with the court's decision). Moreover, we find the rationale of *Nedlloyd* persuasive on this issue. In holding that the regulations applied to contested as well as uncontested claims, the *Nedlloyd* court stated:

> If the ICC regulations were held to apply only to uncontested claims, a carrier could control its own obligations under the regulations by deciding whether or not to contest a claim. In other words, once it received an adequate notice of claim, a carrier could choose to settle the claim voluntarily, in which case it would be required to follow the ICC regulations concerning processing and payment. Alternatively, by denying liability, the shipper could avoid the ICC procedure for responding to an adequate claim and force the shipper to file suit. Thus, limiting the applicability of the regulations to voluntarily-settled claims would permit precisely the type of discrimination among claimants that the regulations were intended to address.

*Nedlloyd,* 922 F.2d at 908 (citation omitted). Based on the implied application of the regulations to a contested claim in *Culver* and the rationale of *Nedlloyd,* we hold that the ICC regulations apply to contested claims.

■ However, our determination that the regulations apply to contested claims does not completely resolve this case. We must also determine whether a written claim must specify a dollar amount to be legally sufficient under the regulations. While this court has never addressed this question directly, We have held that a claim, which did not specify an amount, was legally sufficient following promulgation of the regulations. *Culver,* 782 F.2d at 1467–69. Other circuits, however, have held that a claim must specify an amount of damages to be considered legally sufficient under the regulations. *See Nedlloyd,* 922 F.2d at 908–09; *Pathway Bellows,* 630 F.2d at 900–03 (court ruled that a letter was not sufficient notice because it did not affirmatively assert liability against the carrier and failed to claim a specified or ascertainable amount of damages). We expressly reject this conclusion.

Cases decided by this court after promulgation of the ICC regulations have held that written claims are to be construed liberally and that the standard for determining sufficiency is one of substantial performance. *Taisho,* 762 F.2d at 1368; *see also Culver,* 782 F.2d at 1469. Citing *Wisconsin Packing,* the *Taisho* court stated that "[t]he form of the written notice is less important than its adequacy in apprising the carrier of the basis for the claim and of the fact that reimbursement will be sought." *Taisho,* 762 F.2d at 1368. The *Culver* court limited *Taisho,* noting that "*Taisho* simply relaxed the need for a formal claim in limited situations." *Culver,* 782 F.2d at 1469. The *Culver* court also indicated that after *Taisho* a shipper cannot recover damages if a written claim is required under the bill of lading, and one is not filed within the period provided by the bill. *Id.* Moreover, the *Culver* court concluded that "[1] a written notice of damage, coupled with [2] a clearly communicated intent to hold the carrier liable, plus [3] the carrier's investigation, suffices as a written claim." *Id.* Notably, the court did not indi-

cate that an amount had to be specified in order to satisfy the written claim requirement.[1]

▮ Here, there was a written notice of damage and a clearly communicated intent to hold G.I. liable. Moreover, the record indicates that G.I. performed some investigation of the claim.[2] Under *Taisho* and *Culver*, nothing more is required to satisfy the written claim requirement. Indeed, the purpose of the written claim requirement is not to permit the carrier to escape liability, but to insure that the carrier may make a prompt and thorough investigation of the claim. *See Culver*, 782 F.2d at 1469; *Pathway Bellows*, 630 F.2d at 903 n. 5. The December 2nd letter accomplished this purpose.

▮ In addition, we are not convinced that the December 2nd letter does not satisfy the regulations even if strictly applied.[3] INA

sent a written communication that clearly identified the shipment and asserted liability. Moreover, while the letter did not specify an amount of damages, that amount was arguably determinable from the other information given in the letter or already available to the carrier. While some would debate whether the claim complied with the regulations in every respect, a liberal construction of the letter leads to the conclusion that the letter substantially complied with the regulations.[4]

Finally, it seems that the notice in this case served its purpose. It identified the shipment, contained a clear intention to hold the carrier liable, and gave what proved to be a reasonable estimate of the claim amount. No more is needed to permit the carrier to make a prompt and thorough investigation, which is the purpose of the notice requirement. *See Culver*, 782 F.2d at 1469. Ac-

---

1. The district court indicated that the plaintiff in *Culver* had noted the amount of damage on the bill of lading. Thus, the district court concluded that *Culver* supported G.I.'s position because the notation on the bill of lading provided the parties in that case with the exact information that the parties here lacked, i.e., the amount of damages. However, the district court misapprehended the character of the notation on the bill of lading in *Culver*. The notation on the bill of lading stated: "Damage to boat due to accident 1/18/82. Damage and repair pending." *Culver*, 782 F.2d at 1468. No dollar amount was attached to the damages until later.

2. It is unclear from the record to what extent G.I. investigated this claim. At the hearing on the motion for summary judgment, the parties appeared to agree that the reason an amount had not been specified by INA within the nine month period was because INA was looking into the possibility of salvaging the lenses. Both parties apparently thought that the lenses could be re-sterilized and sold on the market. G.I. maintains that it did not perform the kind of investigation it normally would have in the case of a $100,000 claim because it believed that the goods would be salvaged. G.I. contends that this belief was based on representations made by Eye Tech and INA.

 Were we to rule in G.I.'s favor on the basis that a full investigation was not undertaken, we would create a rule that would permit a carrier to avoid liability by failing to investigate a claim even when provided with the information necessary to undertake the investigation. Thus, we conclude that a carrier's failure to investigate a claim or failure thoroughly to investigate a claim when provided with the necessary information, including facts necessary to identify the goods

and put the carrier on notice as to the potential liability, will not prevent recovery for the damaged goods.

3. As indicated previously, we must construe a written claim liberally under a standard of substantial performance. *See Taisho*, 762 F.2d at 1368.

4. G.I. also argues that paragraph (d) of 49 C.F.R. § 1005.2, entitled "Claims for uncertain amounts," precludes INA's action for damages. However, we read the paragraph differently. Paragraph (d) proscribes voluntary payment of a claim that does not meet the requirements of paragraph (b), but it does not necessarily preclude the presentation of such a claim in a court of law. The First Circuit has indicated that the regulations must be read to bar a subsequent suit if a sum certain of damages is not claimed within the nine month period. *Nedlloyd*, 922 F.2d at 908. Otherwise, the court contends the regulatory purpose of encouraging voluntary settlement would be frustrated because a shipper could bring an action against a carrier without first providing the carrier the opportunity voluntarily to pay a properly notified claim. *Id.* We find this argument unpersuasive. We fail to see why shippers will be eager to circumvent the notice requirements, avoid voluntary settlement, and embark upon expensive, time-consuming litigation to recover their damages. Moreover, we believe that there are circumstances, such as those presented by the facts of this case, in which a claim should be considered sufficient even though it does not specify the amount of damages. *See also Nedlloyd*, 922 F.2d at 909 (excusing the failure to specify an amount of damages in certain situations).

cordingly, we conclude that the Dec. 2nd letter was a legally sufficient written notice of claim, and we REVERSE the district court's grant of summary judgment in favor of G.I.