

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-19-2005

# S & H Hardware v. Yellow Transp Inc

Precedential or Non-Precedential: Precedential

Docket No. 04-4591

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"S & H Hardware v. Yellow Transp Inc" (2005). *2005 Decisions.* Paper 15.

http://digitalcommons.law.villanova.edu/thirdcircuit_2005/15

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-4591
_____

S & H HARDWARE & SUPPLY CO.,

Appellant

v.

YELLOW TRANSPORTATION, INC.
_____

Appeal from the United States District Court
For the Eastern District of Pennsylvania
D.C. No.: 02-cv-9055
District Judge: Honorable Timothy J. Savage
_____

Argued: October 25, 2005

Before: SLOVITER, FISHER, ROSENN, Circuit Judges

(Filed: December 19, 2005 )

Francis Recchiuti (Argued)
Vangrossi & Recchuiti
319 Swede Street
Norristown, PA 19401

    *Counsel for Appellant*

Jonathan F. Ball(Argued)
Paul D. Keenan
Janssen Keenan & Ciardi, P.C.
2005 Market Street, Suite 2050
Philadelphia, PA 19103

    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

ROSENN, Circuit Judge.

This appeal raises the importance of a simple requirement of notice under the Carmack Amendment to the Interstate Commerce Act. It also illustrates how failure to comply with a simple, statutory requirement can preclude consideration of the merits of the underlying claim. The precise issue on appeal is whether the appellant, S & H Hardware & Supply Company ("S & H"), complied with the Carmack notice requirement, allowing it to pursue a claim to recover for losses incurred when appellee Yellow

Transportation ("Yellow") improperly diverted shipments of goods consigned to S & H. S & H suffered over a million dollars in losses when one of its employees, Steven Schwartz, in collaboration with one or more Yellow drivers, diverted shipments to addresses not listed on the bills of lading or shipping contract, and never before used by S & H as points of delivery.

The Carmack Amendment imposes liability on common carriers for damages and losses to goods caused by the carrier in interstate shipment. 49 U.S.C. § 14706(a)(1). The implementing regulations of the Carmack Amendment require, as a condition of recovery, that the consignee of the goods give notice to the carrier of damages or losses within the period of time specified by the bill of lading governing the terms of shipment between the parties, not less than nine months. See id. § 14706(e); 49 C.F.R. § 1005.2(a). The United States District Court for the Eastern District of Pennsylvania granted summary judgment to Yellow, holding that S & H had not complied with the notice requirement. S & H timely appealed. We affirm.

I.

S & H is a hardware store located on Castor Avenue in Philadelphia. It is owned by Harold Stern and operated by him and his son, Herbert. At the time of the events described below, S & H employed Schwartz and authorized him to receive shipments directed to S & H at its store on Castor Avenue or its nearby warehouse located on Knorr Street in Philadelphia. S & H is a member of the Ace Hardware

buying consortium and Ace is its factor. As a result of this arrangement, vendors billed Ace for goods shipped to S & H as consignee, and S & H paid its invoices directly to Ace, and not to the vendors. See In re Freeman, 294 F.2d 126, 129 (3d Cir. 1961) ("The modern factor . . . is a financier who generally lends monies and takes in return an assignment of accounts receivable or some other security.")

Yellow is a trucking company whose shipments to S & H were governed by the standard uniform straight bill of lading, set forth in 49 C.F.R. § 1035 App. B, which provides for a nine-month period to file a claim for lost or damaged goods. In this case, the goods involved were model trains manufactured by Lionel and transported by Yellow, consigned to S & H at its principal business location on Castor Avenue. In the ordinary course of business between S & H and Yellow, Yellow drivers would bring shipments of goods directly to the Castor Avenue location, where the freight charges would be paid by check. The goods would be unloaded at the rear of the Castor Avenue store, or the Yellow driver would be instructed to take them to S & H's Knorr Street warehouse for unloading.

The record demonstrates that sometime in early 2000, Schwartz began to place orders for Lionel trains in the name of S & H. However, those trains were never delivered to the Castor Avenue store. Instead, Yellow's driver called Schwartz's cellphone, a number not listed on the bill of lading, shortly before delivery, and Schwartz instructed the driver to divert the shipments to various unknown locations, also not listed on any bill of lading. Schwartz then paid the freight charges in cash.

4

The Sterns were unaware of this scheme until November of 2000, when S & H received invoices from Ace for large amounts of Lionel model trains that were not in its inventory. Schwartz, out for a claimed illness, initially claimed that the bills were the result of a mistake that he intended to correct. After learning of facts which led S & H to be suspicious of Schwartz, S & H hired a private investigator. The investigator learned that an unauthorized shipment of Lionel trains was to be delivered by Yellow on April 3, 2001. The investigator called the FBI to conduct a sting operation. S & H also notified Clifford Shaw, a Yellow investigator, who participated in the sting operation by following the Yellow driver through the streets of Philadelphia.

The sting operation revealed that Thomas Janusz, a Yellow truck driver, called Schwartz on the phone and informed him of an impending delivery of Lionel trains. Schwartz directed him to a storage facility on Oxford Avenue, Philadelphia, and Janusz bypassed S & H's Castor Avenue and Knorr Street locations totally. When Yellow's dispatcher called Janusz to ascertain his location, he informed the driver that he was under surveillance. When so informed, Schwartz asked Janusz to help him reload the truck and deliver it to the Knorr Street warehouse. There, he was greeted by FBI agents. The shipment was refused by S & H and ultimately returned to Lionel.

In an interview with the FBI, Janusz admitted to having accepted a $100 tip from Schwartz on April 3, as well as $100–$150 tips on at least three other occasions. He also stated that Schwartz had given him a power lawnmower in the

5

past. He denied any knowledge that Schwartz was engaged in illegal activities, although deposition testimony from other drivers showed that they received tips only on rare occasions, and never in excess of $20. Nonetheless, Shaw cleared Janusz of wrongdoing in Yellow's internal investigation.

S & H later ascertained that shipments of Lionel trains valued at $1,646,703.38 had been improperly diverted by Schwartz with the cooperation of one or more Yellow drivers. Aside from the involvement of Yellow investigators in the seizure of the final diverted shipment, no one from S & H appears to have contacted Yellow regarding specific shipments that were improperly diverted. According to an internal Yellow memorandum, Ace Hardware contacted Yellow in order to dispute at least three shipments. The record, however, does not reveal what portion of the total diverted shipments these three shipments represented, nor the form of the communication between Ace and Yellow.

Schwartz was subsequently prosecuted for violations of federal law, and also sued by S & H in a separate civil action. S & H brought this action against Yellow, claiming Yellow's liability for the missing shipments because they were never delivered to the address on the bill of lading. Yellow subsequently moved for summary judgment on October 2, 2003, arguing that S & H had failed to satisfy the notice requirement of the Carmack Amendment, and was therefore precluded from recovering for the lost shipments.

II.

S & H conceded that it had failed to comply with the notice requirement. It argued that Yellow should be estopped

from asserting the notice requirement as a bar to liability because it had actual notice of the diverted deliveries due to its involvement in the investigation, and various communications between S & H and Yellow and Ace and Yellow. S & H also argues that estoppel should be applied because Yellow intentionally obstructed the investigation and was not prejudiced by the lack of formal notice.

In entering summary judgment in favor of Yellow, the District Court noted that filing a written claim was a strict condition precedent to the filing of a lawsuit and that S & H had not qualified for the estoppel exception because it had not shown that Yellow made representations upon which S & H relied in failing to file a written claim. The District Court noted that to prevail, S & H had to establish more than Yellow's actual knowledge of a potential claim. Yellow's participation in the investigation combined with the email from Ace about three diverted shipments, and the bill of lading from the April 3, 2001, returned delivery with the note: "Refused, did not order this!" were not sufficient to satisfy or excuse S & H from the notice requirement. The District Court determined that there was no issue of fact regarding S & H's failure to comply with the notice requirement.

On appeal, S & H argued that the District Court erred in granting summary judgment to Yellow because Yellow should have been estopped from asserting the notice requirement because it had actual knowledge of the facts giving rise to the claim, including "substantial written documentation concerning the claim," and because Yellow had participated in and frustrated the investigation. Yellow argued, in turn, that S & H had failed to adduce sufficient

7

evidence to create a genuine issue of material fact regarding whether it should be estopped from asserting the claim requirement. Thus, it contends that the District Court had not erred in dismissing S & H's claim for failure to satisfy the notice requirement.

III.

This Court has appellate jurisdiction over this appeal under 28 U.S.C. § 1291. We review the District Court's granting of summary judgment de novo, viewing the evidence in the light most favorable to S & H, the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); MBIA Ins. Corp. v. Royal Indem. Co., 426 F.3d 204, 209 (3d Cir. 2005).

A.

The Carmack Amendment provides for liability of common carriers for damage to or loss of goods during shipment. See 49 U.S.C. § 14706(a)(1). Under the implementing regulations of the Carmack Amendment, a claimant must file notice of loss or damage with the carrier within the time specified on the bill of lading, 49 C.F.R. § 1005.2(a), which may not be less than nine months, 49 U.S.C. § 14706(e)(1). In addition to being filed within the proper amount of time, a proper notice must:

- be communicated in writing or, where agreed to by the parties, electronically;

- contain facts sufficient to identify the damaged or lost shipment;

- assert liability for alleged loss, damage, injury,

8

or delay; and

·  demand payment of a specified or determinable amount of money.

49 C.F.R. § 1005.2(b).

Courts have construed the written claim requirement liberally, however, and "the standard for determining sufficiency is one of substantial performance." Ins. Co. of N. Am. v. G.I. Trucking Co., 1 F.3d 903, 906 (9th Cir. 1993); Trepel v. Roadway Express, 194 F.3d 708, 712–713 (6th Cir. 1999).[1]  The crux of the notice is whether it apprises the carrier of the basis for the claim and that reimbursement will be sought. Ins. Co. of N. Am., 1 F.3d at 906.  The purpose of the written claim requirement is to insure that the carrier may promptly investigate claims, and "not to permit the carrier to escape liability." Id. at 907; accord Thompson v. James G. McCarrick Co., 205 F.2d 897, 901 (5th Cir. 1953) (claim requirement satisfied when written documents "supplied sufficient information upon which a prompt and complete investigation [could] be based" (internal quotation omitted)).

Oral or actual notice is not sufficient to satisfy the

---

[1]In this case, the District Court noted that "[t]he filing of a written claim within the prescribed period is a strict condition precedent to the filing of a lawsuit." S & H Hardware & Supply Co. v. Yellow Transp., Inc., No. Civ. A-02-CV-9055, 2004 WL 1551730, at *2 (E.D. Pa. July 8, 2004).  The District Court did not mention the substantial compliance standard.

9

substantial compliance requirement; rather, some form of written notice is required.  Perini-North River Assoc. v. C. & O. Ry., 562 F.2d 269, 272-273 (3d Cir. 1977) (citing St. Louis, Iron Mountain & S. Ry. Co. v. Starbird, 243 U.S. 592, 605 (1917)).  Courts have construed flexibly the writing requirement.  See, e.g., Am. Synthetic Rubber Corp. v. L. & N. R.R., 422 F.2d 462, 468 (6th Cir. 1970) (the claimant satisfied the requirement by showing the documents to shipping officials rather than filing them); Thompson, 205 F.2d at 901 (the writing requirement had been satisfied when the claimant sent the carrier a "statement of protest," which specified the damaged shipments, indicated that payment would be disputed, and gave an estimate of damages).

In this case, the only written communication submitted by S & H to Yellow was the returned delivery slip of April 3, 2001, with the handwritten notation "Refused, did not order this!"  Furthermore, S & H returned this shipment to Lionel.  Even if it did suffer damages, this communication could only be sufficient to satisfy the notice requirement for that particular shipment because it did not identify any other shipments.  The regulations, however, specifically note that "notations of shortage or damage, or both, on freight bills, delivery receipts" are not sufficient notices of a claim.  See 49 C.F.R. § 1005.2(c).  Therefore, the delivery receipt does not satisfy the notice requirement even for that shipment.

In addition to the delivery receipt, there was some communication by Ace Hardware with Yellow regarding three contested shipments.  Because the factoring relationship between Ace and S & H is one of agency, we note, without

10

determining the merits of the argument, that a communication from Ace on behalf of S & H could potentially be attributed to S & H for purposes of evaluating whether it satisfied the notice requirement. However, S & H did not make this specific argument in the District Court, and it also failed to produce any evidence of the form the communication between Ace and Yellow took. S & H only produced indirect evidence of the communication in the form of internal Yellow emails. In addition, those emails appear to dispute only the freight charges, and not the value of the shipped goods themselves. S & H has the burden of proof on the issue of whether it satisfied the notice requirement. Therefore, this communication from Ace provides actual notice at best and is not sufficient to satisfy the notice requirement. Perini-North, 562 F.2d at 272.

We can discover no other written communications between S & H and Yellow regarding the lost shipments. We are constrained to conclude, therefore, that S & H did not substantially comply with the Carmack notice requirement, despite its huge loss.

B.

S & H also argues that Yellow should be estopped from asserting the notice requirement because it had actual notice. Moreover, S & H argues that Yellow "participated in and frustrated the investigation." According to S & H, Yellow obstructed the investigation because of its "supposed inability to follow a large truck in Philadelphia" and because its dispatcher improperly informed the driver that he was

11

under surveillance.  S & H also argues that Yellow's investigators cleared Yellow employees of wrongdoing too hastily, notwithstanding "an inference . . . that Yellow's agents were both active participants in Schwartz's thefts and were covering up that involvement to protect Yellow."

We have held that actual knowledge is not a sufficient basis on which to base estoppel unless there is an inducement not to file accompanied by reliance.  Perini-North, 562 F.2d at 272–273;  compare Heckler v. Cmty. Health Servs., 467 U.S. 51, 59 (1984) (noting that the hallmarks of estoppel are reasonable reliance on a misrepresentation of fact that induces the injured party to change his position for the worse).  We have limited the application of estoppel to excuse the notice requirement to cases in which "the carrier's conduct in some way induced the claimant's failure to file."  Perini-North, 562 F.2d at 272.  For example, when the carrier's representative gave an oral waiver, which the carrier subsequently ratified by conduct, the carrier could be estopped from asserting the notice requirement as a bar to liability.  Id. at 274.

Two other circuits have employed estoppel in the same fashion.  The United States Court of Appeals for the Second Circuit held that when the carrier provided an improper address to the claimant, the carrier could not raise filing error as a defense when that error consisted of sending the claim to the wrong address.  Lehigh Valley R.R. v. State of Russ., 21 F.2d 396 (2d Cir. 1927).  The United States Court of Appeals for the Fifth Circuit declined to apply estoppel to prevent a carrier from asserting the requirement that a notice specify the amount of the claim because the carrier had directly solicited

12

more specific statements of the amount of the claim. Salzstein v. Bekins Van Lines, 993 F.2d 1187, 1191–1192 (5th Cir. 1993) (holding nonetheless that the consignee had provided the carrier with a determinable amount sufficient to satisfy the notice requirement).

S & H asks us to expand the estoppel exception to this case based on the allegation that Yellow's driver was involved in the theft and its assertion that Yellow obstructed the investigation. Viewing the evidence in the light most favorable to S & H, however, we decline to create a new grounds for invocation of the estoppel doctrine. Yellow did not say or do anything to lead S & H to believe that it would not need to meet the claim filing requirement. Yellow did not tell S & H it was not necessary to file a claim and did not give S & H faulty information as to the proper method of filing. We cannot, therefore, apply the doctrine of estoppel in this case to excuse S & H from the notice requirement. Perini-North, 562 F.2d at 272–273.

S & H also urges this Court to adopt what it states is the rule of the United States Court of Appeals for the Seventh Circuit, that the notice requirement is inapplicable to contested claims. S & H appears to have read the Seventh Circuit's decisions too broadly. Although the Seventh Circuit held that the requirements of 49 C.F.R. § 1005.2 did not control the *form* of the notice required for contested claims, it did not excuse the consignee from the duty to provide sufficient notice. See Wisc. Packing Co. v. Ind. Refrig. Lines, 618 F.2d 441, 445 (7th Cir. 1980). Rather, the Court held that a letter from the consignee to the carrier that stated that the

13

consignee had rejected a defective shipment, identified the goods by reference, and set forth a formal statement of the damage, was sufficient notice to satisfy the requirements of the Carmack Amendment. Id. at 444–445.

It is settled law that the notice requirement applies to all claims against carriers for losses. See Perini-North, 562 F.2d at 270 (applying the notice requirement to claim against carrier over damaged merchandise but finding estoppel appropriate); accord Trepel, 194 F.3d at 711–713; Ins. Co. of N. Am., 1 F.3d at 906; Salzstein, 993 F.2d at 1190 n.2; Nedlloyd Lines v. Harris Transp., 922 F.2d 905, 907 (1st Cir. 1991); Pathway Bellows, Inc. v. Blanchette, 630 F.2d 900, 904 (2d Cir. 1980). As a matter of public policy, the notice requirement is intended to provide carriers with an opportunity to investigate claims, so it reaches its full usefulness precisely when a carrier wishes to contest a claim. Cf. Ins. Co. of N. Am., 1 F.3d at 906–907.

In this case, with the exception of the April 3, 2001 delivery, without some notice of which shipments S & H suspected were diverted, Yellow had no way of ascertaining which deliveries S & H would contest. In every case in which Schwartz diverted a delivery, he paid the freight charges and signed off on the delivery. Thus, Yellow had no reason to suspect anything was amiss. By the time S & H filed its suit, it was December, 2002, more than a year and a half after the last diverted shipment in April, 2001. At this point, it would have been very difficult for Yellow to conduct an adequate investigation to determine whether its drivers were engaged in wrongdoing. S & H's failure to provide Yellow with

14

adequate notice may also have contributed to the truncated nature of its internal investigation, which did not find any wrongdoing among its drivers, although the evidence demonstrates that Janusz, at a minimum, had reason to suspect that Schwartz was engaged in wrongdoing.

Yellow's alleged obstruction of the investigation does not provide a proper basis upon which to base application of estoppel in this case. S & H never provided Yellow with sufficient information upon which to proceed with an investigation. Compare Ins. Co. of N. Am., 1 F.3d at 907 n.2. Therefore, it would not be equitable to apply the estoppel exception here. See Perini-North, 562 F.2d at 270 ("Local rules of estoppel may not be applied so as to thwart the purposes of federal statutes. The converse is also true: the doctrine should be used when it enhances the statutory purpose."). Accordingly, we are compelled to reject the estoppel exception to prevent Yellow from invoking the notice requirement.

## III.

For the foregoing reasons, the judgment of the District Court will be affirmed. Each party to bear its own costs.