

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-9-2008

# Lewis v. Atlas Van Lines Inc

Precedential or Non-Precedential: Precedential

Docket No. 07-2688

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Lewis v. Atlas Van Lines Inc" (2008). *2008 Decisions.* Paper 450.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/450

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL
IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2688
_____

RICHARD J. LEWIS;
PATRICIA A. LEWIS

Appellants,

v.

ATLAS VAN LINES, INC.
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 06-cv-1862)
District Judge:  Honorable John E. Jones, III

_____

Argued June 3, 2008

Before:  FISHER, JORDAN, *Circuit Judges*,
and YOHN*, *District Judge.*

_____

*Honorable William H. Yohn, Jr., Senior Judge, United
States District Court for the Eastern District of Pennsylvania,
sitting by designation.

(Filed: September 9, 2008)

_____

James J. West [ARGUED]
105 N. Front Street - #205
Harrisburg, PA   17101
        *Counsel for Appellant*s

James A. Wescoe [ARGUED]
Rawle & Henderson
1339 Chestnut Street - 16th Fl.
Philadelphia, PA   19107
        *Counsel for Appellant*

_____

OPINION

_____

JORDAN, *Circuit Judge*.

        This appeal involves a claim by Richard and Patricia
Lewis against Atlas Van Lines, Inc. ("Atlas") for damages
incurred as a result of Atlas's failure to live up to its promise
to move the Lewises' household belongings by a date certain.
The District Court dismissed the Lewises' claim, concluding
that they had failed to comply with the procedural
requirements of 49 U.S.C. § 14706, also known as the
"Carmack Amendment," or, for purposes of this opinion, the
"Amendment."  While we agree with the District Court as to
one aspect of its ruling, as more fully explained herein, we
disagree that the Lewises' claim for damages in the amount

of additional mortgage payments they had to make and the lost profit on the sale of their home was insufficient to comply with the Carmack Amendment and applicable regulations. We will therefore vacate the District Court's order dismissing the case and remand for further proceedings.

## I. Standard of Review & Jurisdiction

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. The standard of review for a dismissal under Federal Rule of Civil Procedure 12(b)(6) is *de novo*. *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008). In conducting our review, we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* at 233.

## II. Background

Consistent with our standard of review, we recite the facts of the case in the light most favorable to the Lewises. The Lewises owned and lived in a house in Glen Rock, Pennsylvania. On July 19, 2004, as part of a planned move to New York, they entered into a contract to sell that residence. The sales agreement provided that the Lewises would deliver "a vacant building" to the buyer at the time of the closing, which was scheduled for August 27, 2004. (Appellee App. at A24 ¶¶ 6-8.) Well aware of the need to move their belongings quickly to comply with the terms of the sales

agreement, the Lewises solicited a bid from Atlas's local agent, Warners Moving and Storage ("Warners"), explicitly informing Warners that their house had to be empty before August 27. The Lewises also informed Warners that they had purchased a new home in New York and that they intended to use the proceeds from the sale of their Pennsylvania home to pay for it.

Warners assured the Lewises that, if hired, it would have their Pennsylvania residence emptied by August 26, the day before the closing was scheduled to occur. On July 27, 2004, a Warners sales representative executed an agreement with the Lewises providing that "Warners Moving and Storage will arrive at your home on 8/23 & 8/24 to box the household belongings with loading the household effects on 8/25 & 8/26. Delivery is scheduled for 8/31 or 9/1." (Appellee App. at A42.)

However, notwithstanding its explicit promise, made with full awareness of the Lewises' obligation to present an empty home at closing on August 27 and their need to pay for their new home in New York, Warners dramatically failed to fulfill its commitment. On August 23 and 24, Warners did pack the Lewises' belongings as required, and on August 25, Warners did provide a moving van at the Lewises' residence, and began loading the belongings into the van. Despite its obligation to complete the loading by the following day, though, and knowing full well the possible consequences to the Lewises, Warners advised the Lewises that the moving van was leaving that evening because the tractor and crew

were needed to handle a move to North Carolina for another customer the next day.

The Lewises were still left believing that another crew would appear with a tractor trailer to finish their move as scheduled. But, on August 26, the day it had agreed to complete the loading, Warners failed to show up at the Lewises' home. Obviously concerned, the Lewises attempted to contact Warners. No one from Warners appeared at the Lewises' home that day, and no one from Warners offered any explanation for the delay. Nor did Warners appear on August 27, the day of the closing. Aware that the real estate transaction was in serious jeopardy, the Lewises again tried to contact Warners and eventually spoke to Jeff Warner at around noon on August 27.[1] Mr. Warner advised the Lewises that there were no licensed drivers available to deliver a moving van to their residence.

Later that day, the Lewises attended the scheduled closing. Not surprisingly, given Warners' failure to perform as promised, the Lewises were unable to deliver a vacant home to the purchasers. The purchasers refused to go through with the sale. Warners did not complete the loading of the Lewises' belongings until August 29, and did not deliver them to New York until September 3, 2004.

---

[1]We are unable to tell from the record whether Jeff Warner was a principal of Warners or simply an employee.

When the Lewises' belongings arrived at their new home in New York, Richard Lewis acknowledged their receipt by signing a Household Goods Bill of Lading and Freight Bill. That document provided that "as a condition precedent to recovery, a claim for any damage ... or delay, must be filed within nine months after delivery ... . When a claim is not filed ... in accordance with the foregoing provisions, carrier shall not be liable and such a claim shall not be paid." (Appellee App. at A139.)

The following month, on October 26, 2004, the Lewises' attorney sent a letter to Warners requesting compensation for losses incurred because of Warners' failure to timely perform as promised under the parties' agreement. The letter requested damages equal to the "loss of profit on the sale of their residence, additional mortgage payments that Mr. and Mrs. Lewis have had to pay on two mortgages on their Pennsylvania residence which otherwise would have been paid off at closing, and various other miscellaneous expenses they would not have otherwise incurred." (Appellee App. at A150.) The letter went on to explain that the Lewises could not provide an exact dollar amount for their losses "until they are able to sell their Pennsylvania residence." (Appellee App. at A151.) Shortly thereafter, on November 4, 2004, Warners' counsel sent a letter to the Lewises' attorney acknowledging receipt of the October 26, 2004 letter, and requesting additional information and documentation.

On March 14, 2005, the Lewises entered into a new contract to sell their Pennsylvania property. The sale closed on June 3, 2005, at a price approximately $35,000 lower than

the amount the Lewises would have received under the prior sales agreement, had that transaction been completed. During the nine-month period between the delivery of their belongings to New York and the sale of their Pennsylvania residence, the Lewises paid approximately $9,000 in mortgage payments on the Pennsylvania residence, approximately $1,600 in additional utility bills, and over $28,000 in additional taxes.[2]

On November 9, 2005, the Lewises sent a letter to Warners fully explaining their damages and providing a detailed spreadsheet showing the expenses incurred because of Warners' failure to keep its promises. Warners refused to pay, and the Lewises were compelled to file suit.

In their complaint filed on August 23, 2006 against Atlas in its capacity as Warners' principal, the Lewises asserted claims for breach of contract and negligence and sought approximately $72,000 in damages. Atlas, relying on the Carmack Amendment, removed the case to the United

---

[2]While $28,000 may seem an extraordinary tax liablity under these circumstances, the Lewis's explained in a November 9, 2005 letter to Atlas that approximately $20,000 of that figure represented federal income taxes that they were required to pay as a penalty for withdrawing money from a 401(k) account. They assert that they withdrew the money so that they could purchase their home in New York, a step they would not have had to take if they had been able to sell their Pennsylvania home as planned.

States District Court for the Middle District of Pennsylvania. Atlas then filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). It argued that the Lewises' state law claims were preempted by the Amendment and that the Lewises could not obtain relief under that statute because they had not complied with an associated regulation, 49 C.F.R. § 370.3, which requires a shipper to file a claim "for a specified or determinable amount of money" with the carrier within the time limits specified in the bill of lading.

On January 30, 2007, the District Court denied Atlas's motion to dismiss, concluding that the Carmack Amendment did not preempt the Lewises' state law claims. However, on May 30, 2007, the District Court granted Atlas's motion for reconsideration and dismissed the case. In doing so, the District Court agreed with Atlas that the Lewises' state law claims were preempted and that the Lewises had not complied with the cited regulation. This appeal followed.

## II.     *Discussion*

Subsection (a)(1) of the Carmack Amendment, 49 U.S.C. § 14706(a)(1), provides in relevant part that:

> A carrier providing transportation or service ... shall issue a receipt or bill of lading for property it receives for transportation ... . That carrier... [is] liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property ... .

At oral argument, counsel for the Lewises correctly conceded that the Amendment preempts the Lewises' state law claims against Atlas.[3] *See, e.g., Ga., Fla. & Atlantic Ry. Co. v. Blish Milling Co.*, 241 U.S. 190, 196 (1916) (explaining that the Carmack Amendment covers "all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation"); *Moffit v. Bekins Van Lines Co.*, 6 F.3d 305, 306 (5th Cir. 1993) (holding that the Carmack Amendment preempted state law claims by a

---

[3]Although the Lewises concede that the Carmack Amendment governs their claims, they urge us to exempt them entirely from complying with the claim filing requirements set out in 49 C.F.R. § 370.3. Relying on *Wisconsin Packing Co. v. Indiana Refrigerator Lines, Inc.*, 618 F.2d 441 (7th Cir. 1980), the Lewises contend that § 370.3 does not apply to them because Atlas has chosen to contest their claim. Were we writing on a clean slate, the Lewises' argument might have greater force because, as the Seventh Circuit pointed out in *Wisconsin Packing*, § 370.3 explicitly refers only to claims paid "voluntarily" by a carrier. *Id.* at 445. However, the Lewises' reading of the regulation is foreclosed by our recent decision in *S&H Hardware & Supply Co. v. Yellow Transp., Inc.*, 432 F.3d 550, 556 (3d Cir. 2005) (explaining that "[a]s a matter of public policy, the [regulation] is intended to provide carriers with an opportunity to investigate claims, so it reaches its full usefulness precisely when a carrier wishes to contest a claim").

consumer shipper against a moving company based on late delivery of the shipper's belongings).

As to claims under the Carmack Amendment itself, subsection (e)(1) provides that "a carrier may not provide ... a period of less than 9 months for filing a claim against it under this section ... ." 49 U.S.C. § 14706(e)(1). The contents of a valid claim are set forth in 49 C.F.R. § 370.3.[4] Pursuant to subsection (b) of that regulation, a claim for "loss, damage, or delay to cargo" must include:

> A written or electronic communication ... from a claimant, filed with a proper carrier within the time limits specified in the bill of lading ... and:
>
> > (1) Containing facts sufficient to identify the baggage or shipment (or shipments) of property,
> >
> > (2) Asserting liability for alleged loss, damage, injury, or delay, and

---

[4]The regulations found in 49 C.F.R. § 370.3 went into effect in 1997 and are also found in 49 C.F.R. § 1005.2. As a result, several of the cases we discuss in this opinion cite to 49 C.F.R. § 1005.2 rather than 49 C.F.R. § 370.3. However, the two provisions are identical. *See* Motor Carrier Routing Regulations; Disposition of Loss and Damage Claims and Processing Salvage; Preservation of Records, 62 Fed. Reg. 32040-01 (June 12, 1997) (explaining that, due to the passage of the Interstate Commerce Commission Termination Act of 1995, it was necessary to "add[] to 49 CFR chapter III certain motor carrier transportation regulations, also codified in 49 CFR chapter X." For clarity's sake, we will refer to the regulation as 49 C.F.R. § 370.3 throughout this opinion.

> (3) Making claim for the payment
> of a specified or determinable
> amount of money,

> shall be considered as sufficient compliance
> with the provisions for filing claims embraced
> in the bill of lading ... .

Consistent with subsection (e)(1) of the Amendment, the bill of lading that Atlas gave to the Lewises required that, "as a condition precedent to recovery, a claim for any damage ... or delay, must be filed within nine months after delivery ... . When a claim is not filed ... in accordance with the foregoing provisions, carrier shall not be liable and such a claim shall not be paid."[5] (Appellee App. at A139.) Atlas delivered the Lewises' belongings to their new home in New York on September 3, 2004. Thus, pursuant to the bill of lading and the Amendment, the Lewises had until June 3, 2005 to provide Atlas with notice of their claim in a manner that complied with 49 C.F.R. § 370.3(b).

On appeal, the parties do not dispute that the October 26, 2004 letter sent by the Lewises' attorney to Atlas satisfies the requirements found in § 370.3(b)(1) and (b)(2). They disagree, however, on whether that letter makes a claim for a "specified or determinable amount of money," as required by § 370.3(b)(3). The Lewises argue that the letter makes a claim for a determinable amount of money because it

---

[5]We note that the bill of lading does not appear to contain any reference to the regulation or any requirement that the claim be for a specified or determinable amount of money. We do not imply that such a reference is legally required, but its inclusion may have assisted in the resolution of this dispute before litigation.

11

identifies their losses as the "loss of profit on the sale of their residence, additional mortgage payments that [they] have had to pay on two mortgages on their Pennsylvania residence which otherwise would have been paid off at closing, and various other miscellaneous expenses they would not have otherwise incurred." (Appellee App. at A150.) According to the Lewises, listing the nature of their damages renders their claim "determinable" because those damages are "susceptible of being determined, found out, definitively decided upon, or settled." (Appellant Br. at 17.) Atlas responds that, to make a claim for a determinable amount of money, the Lewises' claim must include, at minimum, some dollar amount, and the October 26 letter fails to provide "any dollar amount whatsoever." (Appellee Br. at 9, 26.) We agree with the Lewises that the October 26, 2004 letter stated a claim for a determinable amount of money as to the amount of their extra mortgage payments and the difference between the price at which they would have sold their Pennsylvania home, but for Warners' actions, and the lower price at which the home ultimately sold. However, a claim for "miscellaneous" expenses is too vague to constitute a claim for a determinable amount of money, as contemplated by the regulation, and hence Atlas is not liable for those expenses.

We begin our analysis of § 370.3 with the rule that "[t]he basic tenets of statutory construction apply to construction of regulations and 'our starting point on any question concerning the application of a regulation is its particular written text.'" *Pa. Fed'n. of Sportsmen's Clubs, Inc. v. Kempthorne*, 497 F.3d 337, 351 (3d Cir. 2007) (quoting *Wilson v. U.S. Parole Comm'n*, 193 F.3d 195, 197 (3d Cir.1999)). In examining a regulation's text, "[i]t is a fundamental canon of ... construction ... that unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *CSX Transp. Co. v.*

12

*Novolog Bucks County*, 502 F.3d 247, 257 (3d Cir. 2007) (citations and internal quotation marks omitted).

As noted already, § 370.3(b)(3) requires that a valid claim include a "written communication ... [m]aking [a] claim for the payment of a *specified or determinable* amount of money." 49 C.F.R. § 370.3(b)(3) (emphasis added). Because the regulation does not define the meaning of the term "specified" or the term "determinable," we must apply the ordinary meaning of those words. "Determinable" simply means "[a]ble to be determined or ascertained." *Black's Law Dictionary* (8th ed. 2004). "Specify," by contrast, means "to mention or name in a specific or explicit manner: tell or state explicitly or in detail." *Webster's Third New International Dictionary*, 2187 (Philip Babcock Gove, ed. 1961) (1986). The plain meanings of "specified" and "determinable" reveal a key difference between them and hence between the kinds of claims permitted by the regulation. A claim for a "specified amount of money" is a claim that explicitly gives the dollar amount of money being claimed. However, a claim for a "determinable amount of money" need not explicitly state the dollar amount claimed. Instead, a claim is "determinable" if the amount of money claimed is merely "[cap]able of being determined or ascertained." Notably, because a claim for a "specific amount of money" must state the amount explicitly, such claims must be reduced to an exact dollar amount at the time the claim is made. By contrast, a claim that is "determinable" need not include any dollar amount at all. Instead, all that is required is that the claim provide enough information to make it possible to assign a dollar amount to the claim at some point after the claim itself is filed.

Our conclusion that "specified" claims under § 370.3(b)(3) include exact dollar amounts while "determinable" claims do not is not only consistent with the

13

ordinary usage of both terms, it is also consistent with another canon of statutory and regulatory construction. We have explained that "[i]f possible, we must give effect to every clause and word of a statute, and be reluctant to treat statutory terms as surplusage." *Tavarez v. Klingensmith*, 372 F.3d 188, 190 (3d Cir. 2004) (citations and internal punctuation and quotation marks omitted). Were we to accept Atlas's invitation to require that every claim must provide some dollar amount to comply with subsection (b)(3), we would be treating the term "determinable" as merely redundant of the term "specified," and would be ignoring the use of the word "or" between the two terms.[6]

Atlas attempts to evade the ordinary meaning of the regulation's language and the basic rules of textual construction by arguing that, while a "determinable" claim need not include the exact amount of the shipper's claim, it must include some dollar amount. We find no support for Atlas's reading, either in the text of the statute itself or in common sense. Requiring a shipper to list some dollar amount presents the shipper with some limited options. The

---

[6]Rather than focus on the regulation's text, the Lewises urge us to adopt a "substantial performance" standard to evaluating claims under § 370.3(b). We have previously noted the possibility of such a standard in dicta. *See S&H Hardware*, 432 F.3d at 554 (stating that "[c]ourts have construed the written claim requirement liberally, however, and the standard for determining sufficiency is one of substantial performance") (internal quotation marks and citations omitted). In this case, we may resolve the Lewises' appeal based on the plain meaning of § 370.3(b)(3). Thus, while we do not reject the application of a substantial performance standard in an appropriate case, we have no reason to consider it here.

14

shipper might list a single dollar amount, such as "$100.00." As we have already explained, such a claim is a claim for a "specified" amount of money, not a "determinable" amount of money. Second, a shipper might list an estimate of its damages, for example, by filing a claim for "$100 more or less." Without further amplification, such a claim is not for a specified or determinable amount of money because 49 C.F.R. § 370.3(d) provides that:

> [w]henever a claim is presented ... for an uncertain amount, such as '$100 more or less,' [the carrier] shall ascertain as nearly as possible the extent, if any, of the loss or damage for which it may be responsible. It shall not, however, voluntarily pay [such] a claim unless and until a formal claim in writing for a specified or determinable amount of money shall have been filed in accordance with the provisions of paragraph (b) of this section.

The implication of the clause "until a formal claim in writing for a specified or determinable amount of money shall have been filed" is that a claim like "$100 more or less" is different from and does not meet the "specified or determinable" standard.

However, we do not read § 370.3(d) to bar all claims that are less than fully specific regarding the dollar amount at stake. Instead, the plain meaning of the word "determinable" leads us to conclude that § 370.3(d) bars claims that include estimated dollar amounts only when the claim does not contain sufficient information to put the carrier on notice of the nature and extent of its liability. *Cf. Trepel v. Roadway Exp., Inc.*, 194 F.3d 708, 712 (6th Cir. 1999) (holding § 370.3(b)(3) was satisfied when the nature of the shipper's damages was not in dispute and the shipper estimated those

15

damages at $150,000); *Ins. Co. of N. Am. v. G.I. Trucking Co.*, 1 F.3d 903, 904-05 (9th Cir. 1993) (applying a "substantial performance" standard to § 370.3(b) and holding that a claim satisfied § 370.3(b)(3) when the shipper identified the shipment at issue, provided supporting documentation, and estimated his damages at $100,000).

Beyond the unwarranted twist Atlas's argument gives to the plain meaning of "determinable," the argument also violates an important purpose of the statute. "The purpose of the written claim requirement is to insure that the carrier may promptly investigate claims, and not to permit the carrier to escape liability." *S&H Hardware & Supply Co. v. Yellow Transp. Inc.*, 432 F.3d 550, 554 (3d Cir. 2005). The "crux of the notice [under § 370.3(b)] is whether it apprises the carrier of the basis for the claim and that reimbursement will be sought." *Id.* Valid claims are determinable not because they include some dollar amount, but because they provide enough information about the nature and extent of the carrier's liability to allow the carrier to understand its potential exposure to liability. *See G.I. Trucking Co.*, 1 F.3d at 906 (explaining that "the form of the written notice is less important than its adequacy in apprising the carrier of the basis for the claim and the fact that reimbursement will be sought."). Thus, although a valid claim will often include an estimate of the shipper's damages along with enough factual information to inform the carrier of the basis for the claim, a dollar amount is not an absolute requirement. *See id.* (stating that "[o]ther circuits ... have held that a claim must specify an amount of damages to be considered legally sufficient under the regulations. ... We expressly reject this conclusion.") (citations omitted).

We conclude that, as to part of what they demanded, the Lewises' October 26, 2004 letter provides a sound example of how a shipper may give proper notice to a carrier

16

of a determinable claim without including a dollar amount. The letter informed Atlas that it was being asked to pay for the loss of profit on the sale of their residence and for additional mortgage payments that Mr. and Mrs. Lewis would have to pay on their Pennsylvania residence which otherwise would have been paid off at closing. (Appellee App. at A150.) The letter went on to explain that the Lewises could not provide an exact dollar amount for their losses "until they are able to sell their Pennsylvania residence." (Appellee App. at A151.) Based on the information provided to it by the Lewises, Atlas knew the nature of that claim, and how the amount of it would ultimately be determined.[7] Section 370.3(b) requires nothing more.

However, the Lewises' additional demand that they be reimbursed for "miscellaneous expenses" requires different treatment. Unlike their claim for lost profit and payment of additional mortgage liability, that claim is not determinable because it does not inform Atlas of the nature of the claim or the extent of Atlas's liability. Hence, with respect to that claim, the Lewises did not file a "determinable" claim within

_____

[7]Atlas also alleges that the Lewises failed to act in a timely manner because they did not provide it with the final dollar amount of their damages until November 2005, well after the nine-month claim filing period specified in the bill of lading had expired. Atlas's argument misses the mark because, for the reasons we have explained, the Lewises' October 26, 2004 letter, which was undisputedly sent within the nine-month period, included a valid claim for a "determinable amount of money" under § 370.3(b)(3).

the nine months specified by the bill of lading, and Atlas is not liable to them for whatever those expenses may be.[8]

Finally, Atlas urges us to follow other Circuits which, it insists, have held that claims which completely lack dollar amounts cannot satisfy § 370.3(b)(3). We decline the invitation. As already explained, our analysis of the text of the regulation persuades us that a dollar amount is not required.[9]

---

[8]It was, for example, only after the nine-month time frame that the Lewises described the tax penalty they faced by being forced to withdraw funds from their 401(k) account.

[9]We note, however, that Atlas overstates the holdings of at least two of the cases on which it relies. In *Pathway Bellows Inc. v. Blanchette*, 630 F.2d 900 (2d Cir. 1980), the Second Circuit did not explicitly hold that a dollar amount was required. Instead it held that the shipper's claim was "inadequate in form" when the relevant portion of the shipper's claim stated in its entirety that "the purpose of this letter is to state, in writing, that we are in the process of filing a claim for freight damage." *Id.* at 901, 904. As we have explained, it is not the lack of a dollar amount that dooms such claims, rather such claims are inadequate because they do not provide a carrier with any information about the nature of the damage incurred, or the extent of the carrier's liability. In addition, such claims are potentially open-ended in the sense that they do not indicate to the carrier when, or how, the shipper's claim will be reduced to a dollar amount. In *Siemens Power Transmission & Distribution, Inc. v. Norfolk Southern Ry. Co.*, 420 F.3d 1243, 1246 (11th Cir. 2005), the Eleventh Circuit considered a claim that included an estimated damages amount of $25,000, not a claim that entirely lacked a dollar amount. The issue before the

18

*IV.    Conclusion*

The District Court erred in concluding that the Lewises' request for reimbursement for additional mortgage payments and loss incurred by virtue of the decrease in the sale price of their Pennsylvania home were not "determinable" claims under § 370.3(b)(3).  Hence, we will vacate the District Court's order and remand for further proceedings consistent with this opinion.

---

Eleventh Circuit was whether "[§ 370.3(b)] could be construed to invalidate ... estimated damages [claims] ... on the ground that such a [claim] is not specified or determinable."  *Id.* at 1252.  In the course of deciding that estimated damages amounts were permissible, the Eleventh Circuit noted that other circuit courts had held a shipper's claim invalid in "situations in which the shipper provided the carrier with no damage amount *at all*."  *Id.* (emphasis in original).  However, contrary to Atlas's contention, nothing in *Siemens* indicates that the Eleventh Circuit adopted the view that a dollar amount is always required.  Instead, it concluded that cases that did not include dollar amounts were inapposite to the issue before it because the claim under consideration included an estimated damages amount.  *Id.*  Thus, Atlas's reading of *Siemens* is overly broad.