## SCAIFE COMPANY v. COMMISSIONER OF INTERNAL REVENUE.

No. 57.  Argued December 11, 1941.—Decided December 22, 1941.

*Mr. Samuel Kaufman,* with whom *Messrs. S. Leo Ruslander* and *James M. Magee* were on the brief, for petitioner.

*Mr. Richard H. Demuth,* with whom *Assistant Solicitor General Fahy, Assistant Attorney General Clark,* and *Messrs. J. Louis Monarch* and *William L. Cary* were on the brief, for respondent.

Mr. Justice Douglas delivered the opinion of the Court.

On July 29, 1936, petitioner filed its capital stock tax [1] return for the period ended June 30, 1936.  This return

---

[1] Sec. 105 (a) of the Revenue Act of 1935, 49 Stat. 1014, 1017, as amended by § 401 of the Revenue Act of 1936, 49 Stat. 1648, 1733, provides:

"For each year ending June 30, beginning with the year ending June 30, 1936, there is hereby imposed upon every domestic corpora-

was prepared by petitioner's treasurer and signed by petitioner's president. The treasurer had been instructed by petitioner's vice-president to place upon the capital stock a value of $1,000,000. By mistake the value was declared at $600,000. This error was not noted by petitioner's president when he signed the return. When the error was later discovered, a new return was prepared declaring the value of the stock to be $1,000,000. This return was lodged with the Collector on September 3, 1936, and a remittance of $400.00 to cover the additional capital stock tax computed on the higher valuation was tendered. The Collector refused to accept the amended return [2] and the remittance of the additional $400.00. Petitioner then filed a petition with the Board of Tax Appeals for a redetermination of its excess profits tax [3] for 1936, claiming

tion with respect to carrying on or doing business for any part of such year an excise tax of $1 for each $1,000 of the adjusted declared value of its capital stock."

[2] Petitioner sought to enjoin the Collector from refusing to accept the amended return. The bill was dismissed by the District Court. *Wm. B. Scaife & Sons Co.* v. *Driscoll,* 18 F. Supp. 748. The Circuit Court of Appeals affirmed. 94 F. 2d 664. This Court denied certiorari. 305 U. S. 603.

[3] Sec. 106 (a) of the Revenue Act of 1935, 49 Stat. 1014, 1019, provides:

"There is hereby imposed upon the net income of every corporation for each income-tax taxable year ending after the close of the first year in respect of which it is taxable under section 105, an excess-profits tax equal to the sum of the following:

"6 per centum of such portion of its net income for such income-tax taxable year as is in excess of 10 per centum and not in excess of 15 per centum of the adjusted declared value;

"12 per centum of such portion of its net income for such income-tax taxable year as is in excess of 15 per centum of the adjusted declared value."

Sec. 106 (b) provides that the "adjusted declared value shall be determined as provided in section 105 as of the close of the preceding income-tax taxable year (or as of the date of organization if it had no preceding income-tax taxable year)."

that that tax should be computed on the basis of a declared value for its capital stock of $1,000,000. The Board sustained the action of the Commissioner. 41 B. T. A. 278. The Circuit Court of Appeals affirmed. 117 F. 2d 572. We granted the petition for certiorari because of a conflict between that holding and the decision of the Circuit Court of Appeals for the Second Circuit in *Lerner Stores Corp.* v. *Commissioner,* 118 F. 2d 455.

Sec. 105 (f) of the Revenue Act of 1935 (49 Stat. 1014, 1018) provides that the adjusted declared value of the taxpayer's capital stock shall be the value as declared in the "first return." The value so declared "cannot be amended." § 105 (f). The return must be made within one month after the close of the year with respect to which the tax is imposed. § 105 (d). While the Commissioner by rules and regulations "may extend the time for making" the return, no extension shall be for more than sixty days. § 105 (d). Under Art. 37 (b) of Treasury Regulations 64 (1936 ed.) an extension of time for filing the return and paying the tax shall be granted only upon written application under oath filed on or before the statutory due date and on a showing of reasonable cause for an extension. Petitioner sought no such extension. It did, however, file the amended return within the sixty day period.

We agree with the court below that the amended return was properly disallowed. A "first return" means a return "for the first year in which the taxpayer exercises the privilege of fixing its capital stock value for tax purposes, and includes a timely amended return for that year." *Haggar Co.* v. *Helvering,* 308 U. S. 389, 395. The return filed on September 3, 1936 was not timely. The statute is not ambiguous. Once the period for filing the "first return" has expired, the value declared "cannot be amended." Unless an extension had previously been obtained, the period for filing ended one month after the close of the taxable year, which in this case was June 30,

1936. Unlike the situation in *Haggar Co.* v. *Helvering, supra,* the due date of the return had not been extended. Nor did the statute make mandatory or automatic an extension for sixty days. It merely gave the Commissioner the power to extend the due date under appropriate rules and regulations. And the latter made no provision for an extension after the expiration of the statutory period. It is immaterial that different rules and regulations might have been promulgated under which an extension might have been obtained in the circumstances of this case. The important consideration is that this amended return was filed after the unextended or statutory due date had expired. In absence of an extension a later due date would have no statutory sanction. See *J. E. Riley Investment Co.* v. *Commissioner,* 311 U. S. 55. Furthermore, the mandate of the statute that the declaration of value contained in the first return cannot be amended must be taken to preclude an amendment after the due date, if that prohibition is to have real vitality.

But petitioner argues that a court of equity has power to relieve against such mistakes. Cf. *Moffett, Hodgkins & Clarke Co.* v. *Rochester,* 178 U. S. 373. Its contention is that the amended return reflects its original intent rather than a shift in position. But we cannot treat this case like a case for reformation of a contract. We are dealing here with an Act of Congress which not only prescribes the formula for determining the time within which a return may be filed but which also explicitly states that a declaration of value contained in the original return may not be amended. Hence, no extension of the due date may be had except pursuant to the procedure which has clear statutory sanction. If we were to grant petitioner the extension which it asks, we would be performing a legislative or administrative,[4] not a judicial, function.

---

[4] There are to be distinguished those cases adverted to in *J. E. Riley Investment Co.* v. *Commissioner, supra,* p. 58, where the Treasury has

The result in individual cases may be harsh. But that may be true in case of any statute of limitations. As we indicated in *J. E. Riley Investment Co.* v. *Commissioner, supra,* such considerations, though a basis for an appeal to Congress for relief in individual cases,[5] are not appropriate grounds for relief by the courts from the strictness of the statutory demand.

*Affirmed.*

provided for correction of certain errors or miscalculations in the original returns. Such an example is Art. 43-2 of Treasury Regulations 86 providing for the filing of amended returns for the purpose of deducting losses which were sustained during a prior taxable year.

[5] Thus Private Act No. 199, c. 440, 50 Stat. 1014, provides that the original declared value of the Jackson Casket & Manufacturing Co., notwithstanding the declaration in its return for the year ending June 30, 1936, should be a value computed on the basis of $125 per share of its capital stock. From the Committee Reports it appears that, due to a mistake by Western Union Telegraph Co. in transmitting a message from the president of the company to its cashier, the latter filed a return in which the value of the capital stock was declared to be $175 per share, rather than $125 per share as the president had directed. H. Rep. No. 777, 75th Cong., 1st Sess.; S. Rep. No. 730, 75th Cong., 1st Sess.