## COMMISSIONER OF INTERNAL REVENUE v. TITUS OIL & INVESTMENT CO.

Nos. 2591, 2592.

Circuit Court of Appeals, Tenth Circuit.

Jan. 13, 1943.

S. Dee Hanson, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Helen R. Carloss, and Louise Foster, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Clark G. Clinton, of Dallas, Tex., for respondent.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

This proceeding is here on petition to review an order of the Board of Tax Appeals. Titus Oil & Investment Company, herein called the taxpayer, was organized in 1933, and was engaged in the oil business. Its books were kept and its income tax returns made on an accrual basis. Its return for 1933 was filed on April 13, 1934, and disclosed no tax liability. Schedule K attached to such return was a balance sheet at December 31, 1933. In the assets column appeared an item "Incomplete Wells $10,486.88", which represented cost of equipment, $4,208.36, and intangible drilling expense, $6,278.52. These expenditures were made in 1933 in drilling the first oil well of the taxpayer. The well was not completed on December 31, 1933. It was in process of being cleaned out, and it was not then known whether it would be a commercial producer or would be abandoned. It was completed as a producing well early in 1934. At the end of 1933, the books and records of the taxpayer showed the expenditures made during the year for equipment and drilling, but it was not known whether additional expenditures would be required; and because the records were incomplete, allocation could not be made of expenditures between investment and expenses. No income from the well was shown in the return. But an amended return was filed in January, 1935, in which the taxpayer reported additional income from oil sales allocable to 1933, total gross income, total deductions, and a net loss—with no tax liability. The total deductions included the item of $6,278.52, above referred to, representing intangible drilling and development costs. The return of the taxpayer for 1934, filed on March 15, 1935, contained a deduction for intangible drilling and development costs; and its return for 1935, filed on March 14, 1936, contained a like deduction.

The Commissioner of Internal Revenue disallowed the deductions for intangible drilling and development costs, taking the ground that the taxpayer made a binding election in its original return for 1933 to capitalize such expenditures, and that the election was effective in subsequent years. Deficiencies resulted for the years 1934 and 1935. On redetermination, the Board held that the taxpayer made an effective election in the amended return to treat such costs

as operating expenses; the deficiencies were accordingly reduced; and the Commissioner sought review.

Section 22 of the Revenue Act of 1932, 47 Stat. 169, 26 U.S.C.A. Int.Rev.Acts, page 487, defines gross income; section 23(a), 26 U.S.C.A. Int.Rev.Acts, page 489, provides that in computing net income all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business shall be allowed as deductions; section 23(l) provides that in case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance shall be made for depletion and depreciation, according to the peculiar conditions in each case, under rules and regulations to be made by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury; Treasury Regulations 77, article 236(l), promulgated under the act, provides in effect that intangible drilling and development costs, such as expenditures made for wages, fuel, repairs, hauling, and supplies, incident to and necessary for the drilling of oil and gas wells and the preparation of such wells for production, may at the option of the taxpayer, be deducted from gross income as expenses or charged to capital; and article 236(d) provides among other things that a taxpayer who has never made expenditures for drilling oil or gas wells prior to the taxable year 1932 must make an election in respect to intangible drilling and development costs in general in the return for the first taxable year in which he makes such expenditures, and further that a taxpayer who has never made expenditures for a nonproductive well prior to the taxable year 1932 must make an election in his return for the first taxable year in which he completes the well. Like statutory provisions are contained in the Revenue Act of 1934, 48 Stat. 680, 26 U.S.C.A. Int.Rev.Acts, pages 669, 671, 673, and like regulations were promulgated under it.

■ The item appearing in the schedule attached to the original return, representing cost of equipment and drilling expenses, clearly indicates a purpose on the part of the taxpayer to treat such costs as capital, not operating expenses. Recognized standards of accounting leave no room for doubt that it was intended to treat them in that manner. That was the first return; it was seasonably filed; the taxpayer had not made previous expenditures for intangible drilling and development costs; and, standing alone, it must be construed as constituting an election under the regulation to return such expenditures as capital investment.

■ But the taxpayer relies upon the amended return as constituting an effective election to treat the expenditures as operating expenses, and that contention was sustained by the Board. Section 53(a)(1) of each Revenue Act, supra, 26 U.S.C.A. Int.Rev.Acts, pages 501, 683, provides that returns made on the basis of the calendar year shall be made on or before the fifteenth day of March of the following calendar year, and that returns made on the basis of a fiscal year shall be made on or before the fifteenth day of the third month following the close of the fiscal year; and section 53(a)(2) provides that the Commissioner may grant reasonable extensions of time for the filing of returns, but that except in the case where a taxpayer is abroad no such extension shall be for more than six months. There is no suggestion that any extension was granted, and in any event the amended return was filed long after the permitted time. It may be conceded without deciding that if it had been seasonably filed, it could be treated in point of election as a part of the original return and as constituting an effective election to return the expenditures for intangible drilling and development costs as operating expenses. Haggar Co. v. Helvering, 308 U.S. 389, 60 S.Ct. 337, 84 L.Ed. 340. Be that as it may, an election to return such expenditures in that manner cannot be exercised or made in an amended return filed out of time. Riley Co. v. Commissioner, 311 U.S. 55, 61 S.Ct. 95, 85 L.Ed. 36; Scaife Co. v. Commissioner, 314 U.S. 459, 62 S.Ct. 338, 86 L.Ed. 339; Boone County Coal Corporation v. United States, 4 Cir., 121 F.2d 988.

The taxpayer urges that this case is not governed by the Riley and Scaife cases, because in each of them the court considered a statute which required the taxpayer to exercise the authorized election in its "first return", while here the regulation provides that it shall be made in "the return for the first taxable year" in which the expenditures are made. The statute considered in the Riley case provided that the taxpayer should elect in his "first return" whether depletion allowance should be computed with or without regard to percentage depletion. It was held that the election

could be made only in an original return or in a timely amendment; and that since the amended return was filed out of time, ineffective. The statute under consideration in the Scaife case provided that the adjusted declared value of capital stock should be the value as declared in the "first return." The court said that "first return" meant a return "for the first year in which the taxpayer exercises the privilege of fixing its capital stock value for tax purposes, and includes a timely amended return for that year." But the amended return there, as here, was filed out of time, and it was held that the declared value in it was not effective. It is sought to distinguish Boone County Coal Corporation v. Commissioner, supra, on the ground that there a tax liability was present in the year for which the amendment was made, while here none existed. But the regulation does not say a first return showing net income subject to tax. It does not speak of a first return disclosing tax liability. It is not limited or narrowed in scope or effect to instances of that kind. Cf. Mother Lode Coalition Mines Co. v. Helvering, 63 S.Ct. 179, 87 L.Ed. ——.

Reversed.