PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

5K LOGISTICS, INCORPORATED,

       *Defendant/Third Party*
         *Plaintiff-Appellee,*

    and

DOMINION RESOURCES SERVICES,
INCORPORATED,

           *Plaintiff,*

      v.

DAILY EXPRESS, INCORPORATED,

  *Third Party Defendant-Appellant,*

    and

THERMAL ENGINEERING
INTERNATIONAL USA,
INCORPORATED,

      *Third Party Defendant.*

No. 10-1907

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, Chief District Judge.
(3:09-cv-00315-JRS)

Argued: September 20, 2011

Decided: October 21, 2011

Before WILKINSON, NIEMEYER, and FLOYD,
Circuit Judges.

Reversed and remanded by published opinion. Judge Wilkinson wrote the opinion, in which Judge Niemeyer and Judge Floyd joined.

---

**COUNSEL**

**ARGUED:** Robert G. Rothstein, FRANKLIN & PROKOPIK PC, Herndon, Virginia, for Appellant. Mark T. Coberly, VANDEVENTER BLACK, LLP, Norfolk, Virginia, for Appellee. **ON BRIEF:** Anne G. Bibeau, VANDEVENTER BLACK, LLP, Norfolk, Virginia, for Appellee.

---

**OPINION**

WILKINSON, Circuit Judge:

The Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, sets up a framework for the timely filing of claims against carriers for damaged cargo. In this case, it is undisputed that neither the shipper nor the shipping broker filed either a claim or a lawsuit within the prescribed time limitations. Were we to create some exception to the statutorily authorized, contractually mandated requirements of prompt filing, we would blow a hole in the balance struck by the Carmack Amendment and undermine Congress's intent to protect carriers against stale claims. We therefore reverse the judgment of the district court in favor of the shipping broker, and remand with instructions to dismiss the lawsuit.

I.

The facts as stipulated by the parties in the proceedings below and as found by the district court are not disputed on appeal. Dominion Resources Services, Inc. ("DRS") contracted with 5K Logistics, Inc. ("5K") for the transportation of

two "tube bundles" from a warehouse in Chambersburg, Pennsylvania, to DRS's facility in Lusby, Maryland. 5K is not a carrier of goods; it is a broker of transportation services that subcontracted with Daily Express, Inc. ("DXI") for the actual carriage of the cargo.

On August 24, 2006, the two tube bundles were loaded onto two DXI trucks at the Chambersburg warehouse, and two separate short-form bills of lading were issued. The relevant bill of lading identified DXI as the carrier and "Dominion Power" as the shipper, and further declared DXI's receipt of the cargo from "Dominion Power c/o 5K Logistics." The bill of lading also incorporated the terms and conditions set forth in DXI's published tariff. That tariff contained requirements that any claim for damage to cargo be filed within nine months of delivery and that any lawsuit for cargo damage be filed within two years of the written denial of a claim.

While en route, one of the tube bundles fell onto I-495 in Maryland and was damaged. As a result, DRS refused to accept delivery of the bundle in Lusby.

On November 14, 2006, 5K sent a letter to DXI notifying DXI that DRS was claiming $192,072.50 from 5K for damage to the tube bundle, and that, in the event 5K was required to compensate DRS, 5K would seek to recover from DXI. DXI responded on November 27, 2006, indicating that it had completed its investigation and that any claims "will be denied."

On May 14, 2009, approximately two years and nine months after the accident, DRS commenced this action against 5K in the Eastern District of Virginia. Four months later, on September 11, 2009, three years and one month after the accident, 5K filed its Answer and its Third-Party Complaint against DXI.

On February 26, 2010, the district court granted DRS's motion for summary judgment, finding that 5K was liable for

breaching the Master Service Agreement between 5K and DRS, awarding damages of $192,072.50 and fees and costs of $135,973.53. In the third-party action between 5K and DXI, the district court granted summary judgment to DXI on 5K's breach of contract claim and also held that 5K's state law indemnity and contribution claims were preempted by the federal Carmack Amendment. A bench trial was held on 5K's remaining Carmack Amendment claim for indemnity and contribution, resulting in a judgment against DXI on July 8, 2010.

In its opinion, *Dominion Res. Servs., Inc. v. 5K Logistics, Inc.*, 2010 WL 2721355 (E.D. Va. July 8, 2010), the district court concluded that 5K had never filed a formal claim against DXI as required by the Carmack Amendment, and that the limitations period for bringing a lawsuit against DXI therefore never began to toll. *Id.* at *2–3. The district court further concluded that 5K could not have filed a claim for indemnity and contribution against DXI until 5K's liability to DRS had been fixed, so the limitations periods did not apply to that claim. *Id.* Having concluded that 5K's claims were not time-barred, the district court then determined that 5K was entitled to recovery from DXI, both of the $192,072.50 that 5K paid to DRS and of the costs incurred by 5K in defending the suit brought by DRS. *Id.* at *4. Those costs were fixed at $135,973.53 in the district court's order of September 7, 2010. This appeal followed.

II.

Initially enacted in 1906 as an amendment to the Interstate Commerce Act of 1887, the Carmack Amendment creates "a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading." *Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 704 (4th Cir. 1993). It is a comprehensive exercise of Congress's power to regulate interstate commerce. As a result it has long been interpreted to preempt state liability rules pertaining to cargo

carriage, either under statute or common law: "Almost every detail of the subject is covered so completely [by the Carmack Amendment] that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulation with reference to it." *Adams Express Co. v. Croninger*, 226 U.S. 491, 505-06 (1913).

In creating this uniform nationwide scheme of statutory remedies, Congress legislated with remarkable care, striking a precise balance between the rights of shippers and carriers. For example, although the Carmack Amendment relieves carriers of the burden of multiple state regulations of their business, it also facilitates claims by shippers, requiring them to make only a prima facie case in order to shift the burden to the carrier to prove that it was not negligent and that the damage was caused by an event excepted by the common law. *See Mo. Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137–38 (1964).

Similarly, the statute allows shippers to bring suit against either the initial carrier (the issuer of the bill of lading) or the delivering carrier, removing "the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment." *Reider v. Thompson*, 339 U.S. 113, 119 (1950). But Congress balanced that provision by allowing "[t]he carrier issuing the receipt or bill of lading . . . or delivering the property . . . to recover from the carrier over whose line or route the loss or injury occurred the amount required to be paid to the owners of the property." 49 U.S.C. § 14706(b).

Congress narrowly limited application of this section, entitled "Apportionment," to "carrier[s]," a term expressly defined in the statute. *See* 49 U.S.C. § 13102(3). Moreover, there is no overlap in the statute between "carriers" and "brokers," who are defined as "person[s], *other than* a motor carrier or an employee or agent of a motor carrier," 49 U.S.C. § 13102(2) (emphasis added). In short, because they did not share in the

"something close to strict liability," *Mitsui Sumitomo Ins. Co., Ltd. v. Evergreen Marine Corp.*, 621 F.3d 215, 217 (2d Cir. 2010) (quoting *Rankin v. Allstate Ins. Co.*, 336 F.3d 8, 9 (1st Cir. 2003)), that applies to "carriers" under the first section of the statute, 49 U.S.C. § 14706(a), Congress explicitly chose not to extend the apportionment remedy to "brokers" under the second section, 49 U.S.C. § 14706(b).

The Carmack Amendment also seeks to preserve this equilibrium in the contractual terms to which carriers and shippers may agree. Although a carrier's substantive liability "may not be limited by contract," *Hubbard v. Allied Van Lines, Inc.*, 540 F.2d 1224, 1228 (4th Cir. 1976), carriers are permitted to impose contractual time limitations for bringing suit, subject only to the statutory minimum of "9 months for filing a claim" and "2 years for bringing a civil action," 49 U.S.C. § 14706(e)(1). This serves to "insure that the carrier may promptly investigate claims," *S & H Hardware & Supply Co. v. Yellow Transp. Inc.*, 432 F.3d 550, 554 (3d Cir. 2005), while still preserving an adequate minimum time for shippers to seek recompense for damaged cargo. Such restrictions not only function as "an industry-wide, indisputably legal, and federally sanctioned statute of limitations," *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.*, 799 F.2d 697, 704 (11th Cir. 1986), but also serve as essential features of the contractual arrangement for the carriage of goods: "The Carmack Amendment thus contemplates that limitation periods are terms to be bargained over between shipper and carrier." *Shao*, 986 F.2d at 707–08.

### III.

It is undisputed that DXI's tariff contained the statutorily permissible, contractually negotiable minimum time limitation for a cargo damage claim: nine months to file a claim and two years from denial of that claim to bring suit. Nor do the parties challenge the district court's determination that no claim was filed, much less one within the specified window.

DRS certainly did not file one. And 5K does not contest the district court's finding that its letter of November 14, 2006, was "merely a notice of its intention to file a claim" rather than the required claim itself. *Dominion Res. Servs.*, 2010 WL 2721355 at *3. The district court properly concluded that although the letter "clearly identified the shipment at issue and requested a specific amount in damages, it did not clearly assert present liability nor did it make a claim for payment." *Id.**

5K asserts that it could not have filed a claim within the time period, because it could not identify its loss until it had been found liable to DRS. But it is not apparent why this is so. *Id.* 5K was well aware of the dollar amount of the damage to the cargo — it attached the repair bill from DRS to the November 14 letter sent to DXI. And the statute imposes liability on carriers for the "actual loss or injury to the property," 49 U.S.C. § 14706(a)(1), not necessarily for the financial burden on the complainant. It suffices to say that 5K was contractually obligated to file the claim within nine months, it did not do so, and it is not clear that it could not have done so.

That ought to be the end of the matter, given that the terms of DXI's tariff clearly state that filing of a claim is "a condition precedent to recovery." But even if we were generously to construe 5K's November 14, 2006 letter as a claim, we would similarly have to construe as a denial DXI's prompt notification on November 27, 2006, that "any claims presented by either 5K or Dominion 'will be denied.'" *Dominion Res. Servs.*, 2010 WL 2721355 at *2. Neither 5K nor DRS filed suit within two years of that denial: DRS first sued 5K

---

*Because the inadequacy of 5K's filing is undisputed, we need not resolve the question that has divided our sister circuits on whether strict compliance with the claim requirements of 49 C.F.R. §§ 370.3(b) and 1005.2 is required, or whether substantial performance is adequate to serve the statutory objective. *See Siemens Power Transmission & Distribution, Inc. v. Norfolk S. Ry. Co.*, 420 F.3d 1243, 1250-54 (11th Cir. 2005) (discussing varied circuit holdings).

on May 14, 2009, and 5K filed its Third-Party Complaint against DXI on September 11, 2009. *Id.* In short, neither the nine month nor the two year limitations period—both of which were contemplated by statute and incorporated into the contract—was observed. Thus, any suit against DXI under that bill of lading should have been dismissed as time-barred.

IV.

In an effort to avoid this conclusion—compelled by the contract between the parties—5K urges us to write exceptions into the Carmack Amendment, exceptions that would upend the careful balance Congress struck between the rights of shippers and carriers.

5K asserts that because its claim for indemnity and contribution did not arise until DRS's suit had been reduced to judgment, it was not required to comply with the time limitations for filing a claim or a lawsuit against DXI. 5K points to no source in law for this rewriting of the statute. The Carmack Amendment clearly preempts any state statutory or common law claim for indemnification, a conclusion properly reached by the district court and with which 5K does not disagree. Nor can 5K avail itself of the apportionment provision of the Carmack Amendment, 49 U.S.C. § 14706(b), because that provision clearly applies only to "carriers," a class from which "brokers" such as 5K are specifically excluded. *See* 49 U.S.C. § 13102 (defining statutory terms). In these circumstances, where Congress explicitly made provision for the indemnification of carriers and specifically excluded brokers from the class of carriers who could benefit from that section, we cannot conclude that it nevertheless intended to exempt claims such as this one from the statutorily permissible and contractually negotiated limitations periods.

This is a case of having to take the good with the bad. Carriers are entitled to an apportionment claim because the first liability provision of the Carmack Amendment allows suit

against any carrier who participates in the transportation called for in a bill of lading. *See* 49 U.S.C. § 14706(a). It is then for that carrier to seek indemnification from the party who was actually responsible under § 14706(b). But because "brokers" such as 5K do not partake in the risks imposed by subsection (a), Congress expressly denied them the benefit of the apportionment remedy in subsection (b).

We are also mindful that DRS's claim for which 5K seeks indemnification is not a Carmack Amendment claim under the bill of lading issued by DXI, but is a contract claim for breach of the Master Service Agreement between DRS and 5K. That is a separate bargain to which DXI is not a party. DRS was only able to bring suit against 5K when it did because 5K failed to incorporate time limitations into that agreement. In essence, 5K argues that the time limitations of DXI's tariff, which DXI expected to be enforced, should be ignored because the Master Service Agreement did not constrain DRS with similar limits. It would do serious violence to the Carmack Amendment's efforts to protect carriers from stale claims to adopt this reasoning. It would essentially make the statutory rights of carriers to prompt filing of claims contingent on the terms of contracts to which the carrier is not a party.

By contrast, 5K had every opportunity to protect itself through the terms of its contracts. As a party to agreements with both DRS and DXI, it could have ensured adequate time to protect its legal rights in either agreement. In the Master Service Agreement, it could have negotiated for terms assigning it any claims DRS would have under the Carmack Amendment, leaving the dispute between DRS and 5K as a breach of contract action, which is not preempted by the Carmack Amendment inasmuch as 5K is a broker, not a carrier. Additionally, 5K could have put time limitations into that agreement as well, requiring DRS to bring any claim in less than nine months, affording 5K the opportunity to turn around and file a timely third-party claim against DXI.

On the other end of the arrangement, 5K could have negotiated for longer time periods to be included in the bill of lading issued by DXI. After all, the nine month/two year structure in 49 U.S.C. § 14706(e) is merely a statutory floor — greater time periods are clearly permissible, and this court has unambiguously informed parties that "limitation periods [under the Carmack Amendment] are terms to be bargained over." *Shao*, 986 F.2d at 707.

Finally, 5K might at least have attempted to file a protective claim within the time period. It seems at least possible that 5K could have taken action against DXI as an agent of DRS, or even as the party contracting for shipment. We need not opine on the validity or outcome of such precautionary action because, after all, 5K chose not to take it. It is merely illustrative of the fact that 5K is not being unreasonably put upon after exhausting every option to comply with the contract's filing window.

5K had means—both in contract negotiation and in legal action — to protect itself, yet it availed itself of none of them. This is a shaky basis on which to ask this court to ignore terms that are not only part of the bargain 5K made with DXI, but that are also expressly contemplated by statute and standard in the industry. *See, e.g.*, Uniform Straight Bill of Lading, Contract Terms and Conditions, 49 C.F.R. § 1035, App. B(2)(b) (incorporating time limitations). We reject 5K's invitation, and will give effect to the contract the parties actually made, not the one 5K should have sought.

## V.

In applying a time bar to a litigant's claim, the fact that "[t]he result in individual cases may be harsh . . . [is] not appropriate grounds for relief by the courts." *Scaife Co. v. Comm'r of Internal Revenue*, 314 U.S. 459, 463 (1941). It is therefore irrelevant that the accident here may have been the fault of DXI. Congress has seen fit to allow shippers and car-

riers to bargain over the time available to bring a claim—a benefit to carriers that is counterbalanced by other rights preserved to shippers. If 5K is displeased with this arrangement, it can ask Congress to change it. Where, as here, a broker and carrier have negotiated a bargain within the boundaries of a careful statutory scheme, we cannot ignore the terms of their agreement merely because the broker is subject to an entirely separate contract that gives rise to separate liability. We therefore reverse the judgment and remand with directions to dismiss the action.

*REVERSED AND REMANDED*