**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 21-1025**

CATHY MARIE BRENTZEL, Individually and as Personal Representative of Robert C. Hacker, Deceased,

Plaintiff - Appellant,

and

ESTATE OF ROBERT C. HACKER,

Plaintiff,

v.

FAIRFAX TRANSFER AND STORAGE, INC.,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T.S. Ellis, III, Senior District Judge. (1:20-cv-01076-TSE-MSN)

Submitted: November 30, 2021                Decided: December 29, 2021

Before WILKINSON, DIAZ, and HARRIS, Circuit Judges.

Affirmed in part and dismissed in part by unpublished per curiam opinion.

James R. Tate, TATE BYWATER, Vienna, Virginia, for Appellant. ROBERT E. WORST, KALBAUGH, PFUND & MESSERSMITH, P.C., Fairfax, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Cathy Marie Brentzel appeals from the district court's order granting Fairfax Transfer and Storage's ("FTS") motion to dismiss her complaint. On appeal, she asserts that the district court erred in considering documents extraneous to the motion to dismiss, erroneously found that the complaint was time-barred, and wrongly determined that Brentzel's state law conversion claim was preempted by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706. While we dismiss the appeal as to the Estate of Robert C. Hacker, we affirm the district court's order dismissing the complaint.

I.

Brentzel in both her individual capacity and as personal representative of her deceased husband, Robert C. Hacker, sued FTS, alleging two counts related to the loss of household goods transported from a Virginia residence to a Washington, D.C. residence, and a third count for alleged theft of money and a ring from the D.C. residence during delivery of the transported household goods. Specifically, Brentzel alleged that she contracted with FTS to move their property from Brentzel's Virginia residence to her residence in Washington, D.C.

With respect to the move, Brentzel "was assisted in the moving project by members of her household staff, including one David Lamonde." (J.A. 8). Lamonde "was assigned by plaintiff Brentzel to oversee the arrangements with the moving company and supervise the physical execution of the actual move." (J.A. 8). Brentzel alleged that FTS was aware that "Lamonde's role was limited to that of an agent only." (J.A. 8). "Lamonde's authority was strictly limited to executing the moving arrangements in accordance with [her]

3

instructions." (J.A. 8). "Lamonde's limited authority included instructions from plaintiff Brentzel to (1) commence the move on or about June 15, 2015, and (2) move all of the contents of the Virginia residence directly to the DC Main Residence in a single move without interim stops." (J.A. 8).

Brentzel asserted that Lamonde's authority did not include the ability "to modify or waive any legal rights of plaintiff Brentzel under the contract of carriage and/or bills of lading." In addition, Brentzel alleged that FTS "was or should have been aware of Lamonde's authority," as well as her instructions to Lamonde. (J.A. 8). "Brentzel and her family members vacated the Virginia residence" at Lamonde's request in order to "facilitate the move." (J.A. 8-9). Brentzel was, thus, out of town and not available "to personally supervise Fairfax Transfer's packing and moving activities." (J.A. 9). FTS was allegedly aware of this.

According to Brentzel, FTS's "documents" revealed that FTS first arrived on June 22, 2015. (J.A. 10). The "documentation" "reflect[ed] that some or all of the household goods . . . were not moved directly to the DC Main Residence, but rather to a transit storage facility under the exclusive control of Fairfax Transfer." (J.A. 10). Brentzel alleged that FTS completed its deliveries in January 2016. However, Brentzel further asserted that FTS failed to deliver approximately one-third of the goods. Finally, Brentzel alleged that an employee of FTS stole $10,000 in cash and a diamond ring from her D.C. home. The cash and ring "were not part of contents being moved from Virginia to DC, and instead were a part of the contents of the DC Main Residence, since before the move began." (J.A. 17).

4

Based on these allegations, Count 1 sought compensatory damages under the Carmack Amendment; Count 2 alleged vicarious liability for conversion of the items never delivered; and Count 3 sought damages under a state law claim for "conversion by a larceny" regarding the ring and cash. FTS moved to dismiss, attaching the bills of lading and alleging that such documents were integral to Brentzel's claims. The bills of lading contain a condition precedent to recovery, requiring a written claim within nine months.

The district court granted FTS's motion to dismiss, ruling that the bills of lading were properly considered and that they rendered Brentzel's claim untimely. The court also found that Lamonde had apparent and actual authority to sign the bills of lading. The court concluded that Brentzel's conversion claim in Count 2 was preempted by the Carmack Amendment. Finally, the court declined to exercise pendent jurisdiction over Count 3 and dismissed it without prejudice.

## II.

We review a dismissal for failure to state a claim de novo. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff cannot prove any set of facts to support her allegations. *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989). Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).

However, a court may consider documents sufficiently referred to in the complaint or central to the plaintiff's claim when the authenticity is not disputed. *Id.*; *see also Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (permitting consideration of extraneous material if such materials are "integral to and explicitly relied on in the complaint"). Mere quotation or reference to documents is not enough to incorporate those documents into the complaint. *See Goines v. Valley Cmty. Servs. Bd.,* 822 F.3d 159, 166 (4th Cir. 2016). Instead, for the document to be considered, the plaintiff's claims must turn on, or otherwise be based on, the contents of the document. *Id.* Short of that, a document is not integral to the complaint and should not be considered. *Id*.

Brentzel contends first that the district court's review of the bills of lading was improper as the bills were not essential or integral to her claims. Brentzel asserts that her references to bills of lading in the complaint were generic and made in passing. She further argues that her claims are based on the Carmack Amendment, not the bills of lading.

The Carmack Amendment "creates a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading." *5K Logistics, Inc. v. Daily Express, Inc.*, 659 F.3d 331, 335 (4th Cir. 2011) (citation and internal quotation marks omitted). The statute requires the initial carrier to issue a bill of lading or receipt for property it transports and states that a carrier is liable to the "person entitled to recover" under the bill of lading "for the actual loss or injury to the property" caused by the initial carrier or any subsequent carrier to which the property is delivered. 49 U.S.C. § 11706(a); *CNA Ins. Co. v. Hyundai Merchant Marine Co,* 747 F.3d 339, 355 (6th Cir. 2014). While the Carmack Amendment specifies that "[f]ailure to issue a receipt or bill of

6

lading does not affect the liability of a rail carrier," 49 U.S.C. § 11706(a), the forming of a contract via a bill of lading is "typically anticipated." *CNA Ins.,* 747 F.3d at 355; *see also Smallwood v. Allied Van Lines, Inc.,* 660 F.3d 1115, 1121 n.5 (noting that the Carmack Amendment requires a receiving carrier to issue a bill of lading).

Thus, a claim under the Carmack Amendment governs situations where a bill of lading or a receipt is required. While a carrier cannot avoid liability by failing to issue the required bill of lading or receipt, in such a case the shipping contract is nonetheless implied. *See CNA Ins.,* 747 F.3d at 355 (noting that there will be either an actual contract, such as in a bill of lading, or a constructive contract based on the Carmack Amendment). Moreover, the Amendment recognizes that the parties can limit liability, including the time period for bringing suit, in a bill of lading in accordance with the statute. 49 U.S.C. § 11706(e).

Accordingly, a claim based on the Carmack Amendment involves a contractual relationship, and an actual, physical document (bills of lading or receipt) is required to be issued by the carrier. In district court, Brentzel did not dispute that the bills of lading were issued to her by FTS upon receipt of her property. She challenged the authority of Lamonde to sign the bills but not their existence or relevance to the contractual relationship between the parties. Because the statute on which her claim is based required a receipt or bill of lading to be issued and explicitly recognized that the document could limit liability in certain instances, the bills of lading or other receipts (or lack thereof) would be necessary to determine the scope of liability and the details of the agreement between the parties. While it is true that Brentzel could have instituted her claim even if no bill of lading was

7

issued, Brentzel makes no argument, either below or on appeal, that FTS failed to issue a bill of lading. Accordingly, we find that the district court correctly found that the bills of lading were integral to Brentzel's claims.

Next, Brentzel contends that there is a question as to whether the bills of lading are authentic. In district court, Brentzel challenged the authenticity of the bills because they were allegedly signed by a career criminal acting as an unauthorized agent. However, this argument does not actually challenge the authenticity of the documents themselves; that is, this argument does not dispute that the bills of lading existed in the form proffered by FTS and were signed by Lamonde. Instead, Brentzel's district court argument went to the issue of whether Lamonde was authorized to sign the bills, which will be discussed below, but does not affect the authenticity or admissibility of the bills of lading for consideration on a motion to dismiss.

Moreover, on appeal, while Brentzel briefly restates her authenticity argument, she also, for the first time, avers that there was no evidence that Lamonde actually signed the bills of lading.[1] In her reply brief, Brentzel raises even more claims, contending that Brentzel's counsel (and perhaps Brentzel and, even, Lamonde) were not aware of the relevant language on the back of the bills of lading until the motion to dismiss was filed in district court. Brentzel also questions whether Lamonde ever saw or understood the back of the forms. Brentzel even surmises that the back of the bills of lading attached to the motion to dismiss may not have been on the back of the documents signed by Lamonde.

---

[1] In fact, in district court, Brentzel admitted that Lamonde signed the bills.

8

However, below, Brentzel did not dispute that the bills of lading proffered by FTS with its motion to dismiss were complete and were presented to and signed by Lamonde. Claims raised for the first time on appeal generally will not be considered, absent exceptional circumstances of plain error or a fundamental miscarriage of justice. *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993); *First Virginia Banks, Inc. v. BP Exploration & Oil, Inc.*, 206 F.3d 404, 407 n.1 (4th Cir. 2000) (declining to consider issues raised for first time on appeal). Moreover, Brentzel avers that, when she filed the complaint, she possessed copies of the bills of lading that did not include the back of the FTS form, where the time limitations were listed. Thus, Brentzel would have been able to raise her current authenticity claim in district court. Instead, Brentzel conceded the authenticity of the documents, and thus, her allegations to the contrary are untimely raised. As such, given that the bills of lading were integral to Brentzel's claims and that there was no timely objection to their authenticity, the district court properly considered the bills during the motion to dismiss.

## II.

Brentzel next asserts that the district court erred in determining that the complaint admitted (or inferred) that Lamonde had actual and/or apparent authority to sign the bills of lading. Brentzel points to allegations in the complaint that "Lamonde's authority was strictly limited to executing the moving arrangements in accordance with his instructions; and included no authority to modify or waive any legal rights of plaintiff Brentzel under the contract of carriage and/or bills of lading." (J.A. 8). The complaint further alleged that FTS "was or should have been aware of the limitations on Lamonde's authority." (J.A. 8).

9

While the district court did not explicitly address these allegations, the court noted that conclusory allegations need not be accepted as true when considering a motion to dismiss. Brentzel avers that these allegations are detailed and should not have been disregarded. However, we find that these statements are, indeed, conclusory. The complaint does not allege how, when, or where Brentzel and Lamonde agreed to the agency relationship and its limitations and fails to provide the contours of this agreement, except in general terms. While Brentzel alleges that the agency was "strictly limited," she did not aver whether there was an employment/agency contract (whether oral or written), whether she had specific discussions with Lamonde about signing moving-related documents, or what sort of discretion Lamonde was permitted in order to execute the move. Importantly, accepting Brentzel's interpretation of her complaint, she alleged an unworkable agreement with Lamonde, whereby she gave him authority to commence, oversee, and execute the move but forbade him from signing the necessary documentation. Such an interpretation is implausible and does not prevent dismissal of the motion. *See Bing v. Brivo Sys., LLC,* 959 F.3d 605, 618 (4th Cir. 2020) (noting that complaint's factual allegations must state a plausible claim and not require speculation to "fill in the gaps"), *cert. denied,* 141 S. Ct. 1376 (2021).

In addition, even assuming that the agency relationship was structured in this implausible manner, the complaint is silent as to how, when, or where FTS was made aware of these allegedly strict limitations. *See Ashcroft v. Iqbal,* 556 U.S. 662, 680-81 (2009) (holding that allegations that petitioners "knew of, condoned, and willfully and maliciously agreed to subject [him] to harsh conditions of confinement" were conclusory and not

10

entitled to be assumed true).  Brentzel would have known the details of her interactions with Lamonde and FTS, and she could easily have amended her complaint to include them.[2]  *See Penalbert-Rosa v. Fortuno-Burset,* 631 F.3d 592, 595-96 (1st Cir. 2011) (noting that *Iqbal* does not create a "mechanical rule" but recognizing that a motion to dismiss "can be countered by plaintiff's supplying of the missing detail").  As such, the district court did not err in finding certain allegations in the complaint lacked the necessary specificity to require a presumption that they were true.

Brentzel next asserts that an agency relationship is one of fact and not law and should not have been decided on a motion to dismiss.  However, the district court properly relied on Brentzel's allegations in the complaint that Lamonde had the authority to "oversee the arrangements with the moving company and supervise the physical execution of the actual move." (J.A. 8).  The complaint also provided that Brentzel was not present for the move, that Lamonde would be supervising the packing and moving activities, and that FTS was aware of this.  (J.A. 8-9).  While Brentzel conclusorily alleged that FTS was aware that Lamonde was under strict instructions not to modify or waive any of Brentzel's legal rights, as discussed above, this conclusory allegation need not be presumed true.  Further, Brentzel failed to allege any facts explaining how Lamonde was to execute and supervise the move without the authority to sign the required documents.  Accordingly, because the complaint's allegations that were contrary to the district court's ruling were not entitled to

---

[2] If Brentzel had factual support for her conclusory allegations, she could have filed an amended complaint as a matter of course after receiving the motion to dismiss.  Fed. R. Civ. P. 15(a)(1).

a presumption of truth, the contours of the agency relationship did not require any factual findings. Instead, the complaint's allegations that Lamonde was tasked with overseeing and executing the move, absent any other detailed allegations, included the logical conclusion that Lamonde had actual authority to sign a bill of lading.[3]

Brentzel next contends that Lamonde's deviations (or Lamonde's acquiescence to FTS's deviations) from the agreed-upon moving arrangements placed FTS on notice that it should inquire further prior to permitting Lamonde to sign the bills of lading. An agent's actions bind a principal when the principal causes a third party, "in good faith and in the exercise of reasonable prudence, to rely on the agent's authority." *Auvil v. Grafton Homes, Inc.,* 92 F.3d 226, 230 (4th Cir. 1996). Brentzel provides no facts from which to infer that FTS should not have relied on Lamonde's apparent authority. While Brentzel avers that Lamonde exceeded his authority even before signing the bills of lading, the complaint fails to allege how or when FTS became aware of this aside from the repeated allegations that it knew or should have known. Moreover, the complaint affirmatively alleged that Lamonde was tasked with execution of the move in Brentzel's absence and that FTS was aware of this fact, allegations that contradict the conclusion that Lamonde was without any discretionary authority to make decisions or sign documents required for the execution of the move.

---

[3] While Brentzel avers that the existence of a bill of lading is not an element of her cause of action, she does not dispute that bills of lading (or receipts) are typical in moving situations and, in fact, required under the Carmack Amendment.

Thus, the district court correctly considered the motion to dismiss and properly granted the motion to dismiss the Carmack Amendment claim as untimely. While Brentzel argues that this result is not consistent with the substantive policies underlying the Carmack Amendment and required formalistic application of Rule 12(b)(6), we find that instead the district court merely accepted the *facts* as alleged in the complaint and disregarded the conclusory statements. As discussed above, Brentzel was free to file an amended complaint providing further factual support and details, and thus, it was Brentzel's decision to stand on her conclusory complaint, rather than a miscarriage of justice or undermining of policy, that caused the dismissal of her suit.

III.

Finally, Brentzel contends that the district court incorrectly found that her state law conversion claim seeking damages for the harm to and destruction of her property shipped by FTS was preempted by the Carmack Amendment. While recognizing that the Carmack Amendment generally preempts state law causes of action for goods lost or damaged in transit, Brentzel argues that FTS's actions were so extreme that they constituted an abandonment of the "contract of carriage" and were criminal in nature. Brentzel contends that the extreme nature of FTS's alleged actions removed the claim from Carmack Amendment preemption.

The Amendment's preemptive force is exceedingly broad and embraces "all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation." *Ga., Fla. & Ala. Ry. v. Blish Milling Co.*, 241 U.S. 190, 196 (1916). The Carmack Amendment "preempts all state or common law remedies available to a shipper

13

against a carrier for loss or damage to interstate shipments." *N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 456 (7th Cir. 1996). Specifically, state law conversion claims are preempted. *See Am. Ry. Express Co. v. Levee*, 263 U.S. 19, 21 (1923); *see also Certain Underwriters at Interest at Lloyds of London v. UPS,* 762 F.3d 332, 336 & n.3 (3d Cir. 2014) (citing cases from numerous circuits finding state contract, fraud, and conversion claims to be preempted).

Brentzel provides no support for an exception to preemption for state law claims alleging theft or other criminal conduct resulting in damage or destruction to property during shipping.[4] To the contrary, the Third Circuit has specifically found that even state law claims based on "intentional conduct or conduct in the nature of theft" are preempted. *Certain Underwriters,* 762 F.3d at 337-38. Thus, we find that the district court correctly found that Brentzel's state law claim for damage to and theft of her property during shipping was preempted by the Carmack Amendment.

Accordingly, we affirm the district court's judgment. Brentzel has filed a motion to amend the case caption to include the Estate of Robert C. Hacker. However, because the Estate has not filed the necessary documentation to participate in the appeal, we deny the motion and grant FTS's motion to dismiss the Estate's appeal. We dispense with oral

---

[4] Instead, Brentzel relies on cases finding that claims seeking damages for injuries separate from the damage or destruction of property are not preempted by the Carmack Amendment. *See, e.g., Gordon v. United Van Lines, Inc.,* 130 F.3d 282, 288 (7th Cir. 1997) (finding claim for intentional infliction of emotional distress related to the destruction of property not preempted although "a claim for damages to the shippers' goods" would be preempted).

14

argument because the facts and legal contentions are adequately presented in the materials

before the court and argument would not aid the decisional process.

*AFFIRMED IN PART;*
*DISMISSED IN PART*